570 So.2d 43 (1990)
Shirley Hartmann, Wife of and Richard P. CARRIERE
v.
FRANK A. OCCHIPINTI, INC.
No. 90-CA-233.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
Rehearing Denied December 17, 1990.
Writ Denied February 22, 1991.
Marshall J. Favret, Thomas J. Lutkewitte, New Orleans, for plaintiffs/appellees.
Stewart F. Peck, New Orleans, for defendant/appellant.
Before GAUDIN, GRISBAUM and WICKER, JJ.
WICKER, Judge.
The Bank of Louisiana appeals a judgment rendered in an eviction proceeding in favor of the plaintiffs, Shirley Hartmann Carriere and Richard P. Carriere. That judgment ordered Bank of Louisiana to vacate immovable property, and it terminated a lease of that property. The issue is the competing rights of a lessor and the lessee's mortgagee with regard to possession to the property. We reverse.
The Carrieres are owners of immovable property in Metairie. They leased this property for five years to Frank A. Occhipinti, *44 Inc. on April 23, 1982. Occhipinti built a restaurant on the property with financing provided by Gulf Federal Savings and Loan Association. To accommodate and protect Gulf Federal, the Carrieres and Occhipinti amended the lease on January 10, 1983, and March 1, 1983; and the amended lease was recorded.
Occhipinti refinanced the loan with Bank of the South and amended the lease again on June 26, 1987. He also executed a collateral mortgage for $1,200,000.00 in favor of Bank of the South, using his leasehold interest and the improvements as collateral. Bank of Louisiana has since acquired the assets of Bank of the South, including this collateral mortgage.
Occhipinti filed for Chapter 11 protection under the Bankruptcy Code, which he later converted to Chapter 7, on March 28, 1989. The trustee in bankruptcy abandoned the leasehold interest and improvements on May 31, 1989. Shortly after, the Carrieres served Occhipinti with notice of default, and when the default was not cured, with a notice to vacate the premises on July 7, 1989. The Carrieres then filed an eviction proceeding against Occhipinti.
A few days later, on July 25, 1989, Bank of Louisiana filed a petition for executory process and in due course purchased the Occhipinti's interest at a sheriff's sale on September 20, 1989. The Carrieres then amended their eviction petition to name Bank of Louisiana, demanding termination of the lease and vacation of the premises.
The trial judge declared the lease at an end and ordered Bank of Louisiana to vacate, recognizing a "lessor's privilege" on the property. "[T]he defendant mortgagee, Bank of Louisiana in New Orleans, did not obtain a subordination of the ground lease to its mortgage on the property. The result of this oversight is the priming of the mortgage by the chronologically superior ground lease."
Bank of Louisiana complains of several alleged errors: the judge failed to recognize that it could legally own the leasehold and improvements separate from the land and that it should not be evicted from its own property; the judge improperly ruled that the lease predated the mortgage, that a lessor's privilege applies to immovable property, and that an eviction is a proper procedure to enforce a lessor's privilege; the judge failed to recognize that the privilege had been waived, had been extinguished by the termination of the lease, and/or had terminated prior to the hearing; the judge found the issue of subordination relevant and/or failed to find that the Carrieres' rights had been subordinated to those of Bank of Louisiana; the judge failed to find that Bank of Louisiana had no obligations to the Carrieres under the lease; and the judge failed to recognize that the Carrieres were estopped by deed from evicting it.
The competing equities here are difficult to resolve. Bank of Louisiana argues that it should, by virtue of its mortgage, have the unlimited use and possession of the buildings on the Carrieres' property, without payment of any rent, and despite the termination of the lease with its reversionary clause. The Carrieres argue that they should have, by virtue of the lease agreement with Occhipinti, the complete ownership of the buildings free and clear of any mortgage in favor of the Bank of Louisiana and despite the bank's having purchased Occhipinti's interest at the sheriff's sale.
The only issue raised by the Carrieres in their pleadings and in the judgment was their right, as lessors, to terminate the lease and evict Occhipinti and/or its successor, Bank of Louisiana. The ownership of the improvements and the rights of the mortgagee were never at issue and were in fact not adjudicated at trial, and the mortgage itself is not in evidence.
The lease contract is the law between the parties. Bank of Louisiana's rights to possession, if any, must flow from that lease agreement and its amendments.
The Carrieres and Occhipinti signed their first lease agreement on April 23, 1982. It anticipated that Occhipinti would construct at its own cost a building, driveways, and parking area and would provide a bond to indemnify the Carrieres against any liens. Occhipinti agreed to keep the property free *45 of encumbrances and indemnify the Carrieres against such encumbrances and to give up the premises at the end of the lease. Occhipinti also agreed to convey to the Carrieres at no cost any "buildings, improvements or structures, free and clear of any liens, rights, title, interest, claim or demand" at the end of the lease. The Carrieres agreed that, in the event Occhipinti mortgaged its interest in any manner, they would give any notices regarding the lease to that mortgagee as well as to Occhipinti. Occhipinti agreed the Carrieres could, in the event of default, declare the lease at an end and occupy the premises. The lease granted the Carrieres the option to sell the property to Occhipinti, should Occhipinti exercise its renewal option, for seventy-five percent of its appraised value or $750,000.00 The Carrieres agreed to give any mortgagee the right to cure any default or to exercise any privilege of Occhipinti under the lease. Further, the Carrieres agreed not to terminate the lease upon Occhipinti's default without giving any mortgagee the right to "commence to eliminate the cause of such default and proceed therewith diligently and with reasonable dispatch...." However, the lease did not impose any liability for Occhipinti's potential default on any mortgagee. The lease did provide that its terms would be binding on the "heirs, personal representatives, successors, or assigns" of the parties.
"In order to induce LENDER to finance the project and its improvements", the Carrieres, Occhipinti, and Gulf Federal Savings and Loan Association amended the lease on January 10, 1983. The amendment added Gulf Federal as an additional insured and authorized it, "at its option, to `stand in the shoes' of the LESSEE and to exercise, on behalf of the LESSEE or itself, all options and rights, and to fulfill all duties and requirements, and to pay any obligations, charges or expense encumbered [sic] on LESSEE to pay." This authority was optional and not mandatory, however. The parties agreed that if the improvements were destroyed and not reconstructed that Gulf Federal would have the insurance proceeds to satisfy its lien and mortgage before any distribution to the Carrieres and Occhipinti. The reversionary clause of the original lease was amended to add, "Except that the said improvements shall remain subject to the LENDER's mortgage until said mortgage is fully paid." The appraised value referred to in the Carrieres' option to sell was limited to the land only and not the improvements. The amended lease affirmed the right of the Carrieres to mortgage the land alone but stipulated that such an encumbrance be subordinated to "any prior encumbrance or mortgage of the LESSEE'S leasehold interest...." The amendment required Occhipinti to "pledge and mortgage all rights and title it may have to the premises and to its leasehold interest and allow said LENDER to exercise all of LESSEE'S rights, to stand in LESSEE'S place, and to take over from LESSEE in the event of.... a default on said indebtedness...." Finally, the parties agreed that any proceeds from condemnation or eminent domain be used first to satisfy Occhipinti's indebtedness to Gulf Federal.
The lease was again amended on March 1, 1983. That amendment enabled Gulf Federal to purchase the property pursuant to the Carrieres' option to sell but it created no obligation for Gulf Federal to do so.
The final amendment on June 26, 1987, was among the Carrieres, Occhipinti, and Bank of the South, as successor to Gulf Federal, in order to grant an additional option to extend the lease until 2002. [The original lease terminated in 1987.]
The clear intent of these amendments was to protect the Bank of Louisiana's interests in order to induce it to finance the restaurant project. The lease documents evidence this: the lender was to be satisfied first out of any insurance proceeds, the reversionary clause was amended to provide that the improvements would remain subject to the lender's mortgage until it was paid, the Carrieres' right to mortgage the land would be subject to the mortgage of Occhipinti's leasehold interest, and the proceeds from any condemnation would be applied first to the lender's mortgage. *46 In addition, the Carrieres have had the benefit of the deal: Bank of Louisiana's predecessors provided the financing needed to make the restaurant enterprise possible. Their rights under the lease should be subordinate to those of the Bank of Louisiana, both by the terms of the lease and by equity.
We hold that, as to Bank of Louisiana, the Carrieres were not entitled to terminate the lease and evict it. However, with regard to Bank of Louisiana's argument that rejection of the lease by the trustee in bankruptcy had the effect of terminating the lease and, with it, the Carrieres' rights, we hold that the lease agreement continues in effect until it is terminated or expires. The rejection of the lease by the trustee did not have the effect of terminating the lease. In Re Storage Technology Corporation, 53 B.R. 471 (Colo.1985); Matter of Garfinkle, 577 F.2d 901 (5th Cir.1978). See also Porter v. Johnson, 369 So.2d 1141 (La.App. 1st Cir. 1979), writ den. 371 So.2d 615 (La.1979).
We expressly do not rule on the ownership of the property. Disputes as to ownership of property must be adjudicated in an ordinary proceeding and not in a summary eviction proceeding. Williams v. Reynolds, 448 So.2d 845 (La.App. 2d Cir. 1984). Nor do we rule on Bank of Louisiana's mortgage rights, as evidence pertaining to that issue is not in the record. In addition, neither the right of the Carrieres to rental payments, if any, nor the right of Bank of Louisiana, if any, to exercise the option to extend the lease is before us. These are issues which must be resolved in other proceedings.
The judgment in favor of Shirley Hartmann Carriere and Richard P. Carriere and against the Bank of Louisiana which terminated the lease and evicted Bank of Louisiana is reversed. The Carrieres must pay the cost of this appeal.
REVERSED.