9716.

ADMINISTRATORS OF THE TULANE EDUCATION FUND vs. THE BOARD OF ASSESSORS ET ALS.

The University of Louisiana is a public institution that the Constitution has recognized, and commanded the Legislature to maintain and support it.

By the Act of July 5, 1884, a contract was made by and between the State and the Administrators of the Tulane Education Fund whereby the State delivered to the Administrators the rights, privileges, franchises, immunities and property of the University, and the Administrators engaged to dedicate all their revenues to its maintenance and development. This is a consecration of the income of the Administrators to public use, and the property from which that income is derived is therefore exempt from taxation.

The character or quality of taxability is not ineffaceably stamped on property and it may be removed by the act of its owner. The Legislature cannot exempt from taxation property that is constitutionally liable to it, but an owner of property may translate it to the domain of constitutional exemption by dedicating it to a public use.

Primarily the Legislature determines what is a public use, and when it has declared what may be so regarded, courts will not interfere except in clear cases of usurpation or abuse of authority. What is for the public good and what are public purposes are for the Legislature to say, and it has a large discretion in determining these questions, which will not be controlled by the courts unless under the exceptions above noted and such like.

Although the title to property be not in the public, if the revenues of it are dedicated wholly to public use and purposes, it is public property within the intendment of the Constitution, and possesses all the immunities and is entitled to the exemptions from taxation of public property.

A PPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*E. D. White, James McConnell* and *E. H. Farrar*, for Plaintiffs and Appellants.

*M. J. Cunningham*, Attorney General; *W. H. Rogers*, City Attorney, and *Blanc & Butler*, for Defendants and Appellees.

The opinion of the Court was delivered by

MANNING, J. The Board of Assessors of New Orleans placed upon the tax roll for 1885 the property given by Paul Tulane to the plaintiffs to promote the education of the white youth of that city. The object of the present suit is to annul that assessment on the ground that the property is exempt from taxation.

The same property was assessed in 1883 and the plaintiffs then claimed the exemption of it from taxation and we held the claim not good. State *ex rel.* Board of Admrs. Tulane Ed. Fund v. Bd. of Assessors, 35 Ann. 668.

Since that decision was rendered the General Assembly have passed an elaborate Act, the evident purpose of which is to effect an exemption of the plaintiffs' property from taxation, and our construction of that Act will determine the question whether the machinery adopted has accomplished the intended purpose.

It is scarcely necessary to say that the General Assembly cannot exempt property from taxation by its own will. Unless the expression of that will is in accord with the Constitution, it can accomplish nothing.

There has been for many years an educational institution in New Orleans called "The University of Louisiana." It was founded by the State and has been fostered by it. For some time only two colleges were in operation in it, those of law and medicine. Later a college for the humanities has been added under the humble name of an academical department. Successive Constitutions of the State have repeated the injunction to the Legislature to maintain it. The last Constitution has emphasized this command and made it imperative—the General Assembly shall from time to time make such provision for the proper government, maintenance and support of the University of Louisiana as the public necessities and well-being of the people may require. Const. 1879, Art. 230. The pecuniary aid was limited to ten thousand dollars a year, and every Legislature since has appropriated the full sum, and we have held that these appropriations have the character and rank of constitutional appropriations. State *ex rel.* Ad. Un. v. Burke, 35 Ann. 457.

The Act of the General Assembly of 1884 begins its title with the expression that the fostering, maintaining and developing the University of Louisiana is one of its objects, and its preamble recites that the Administrators of the Tulane Fund are willing and desirous to take charge of that institution and to devote all the revenues they now have or may ever have to its expansion and development. It then exacts that the Tulane Administrators shall hereafter have full control and the exclusive government of the University of Louisiana, and shall have all the powers, privileges, franchises and immunities that are now vested in the Trustees of the University, and also all of its property ; and in order to enable the State to realize the full benefit of the intention of the Tulane Administrators to devote all their revenues to the public purpose of maintaining the University, the Act declares that a contract is thereby made by and under which the Tulane Administrators are irrevocably vested with all the franchises, privileges and immunities theretofore granted them, and in· consideration therefor they bind themselves also irrevocably to devote all their revenues to the public purpose already stated. And then in recognition of the beneficence of Mr. Tulane and of the fact that the Administrators of the fund created by that beneficence were hereafter to devote it exclusively to fostering and developing this institution of the State, the name of the benefactor was directed to be hereafter prefixed to its ancient name so that the future designation of it shall be the Tulane University of Louisiana.   Acts 1884, pp. 48 *et seq.*

Our learned brother of the lower court construed this Act as being a charter of a new University to which was transferred all the property and privileges of the University of Louisiana. If that be so, the University of Louisiana is abolished, for if all its privileges are transferred to another institution and all the property it had to make those privileges effective and useful to the public is likewise transferred, there will be nothing left but the name. We cannot attribute to the Legislature the intention to denude of its powers and privileges an institution which the Constitution has commanded them to maintain, and thus to make of it a simulacrum without vitality or power. Nor can we attribute to the Legislature a purpose to evade the Constitutional recognition of the existence of the University. Obviously the Legislature cannot abolish the University. It has its root in the fundamental law and that law has ordered the Legislature to foster and develop it. But if without assuming to destroy, the Legislature desiccates it by removing the fecundating sources of its strength and growth, it does practically destroy it.

No doubt the Legislature had in mind the creation of a new University as a consequence or result of the Constitutional amendment that it has directed to be submitted to a popular vote, for among the objects of this act of 1884 expressed in its title is:

"To give said Board of Administrators of the Tulane Education Fund, upon the adoption of said Constitutional amendment, *not only the full powers of administration over the University of Louisiana*, conferred by this Act, but also the power to *create*, develop and maintain a great University in the city of New Orleans, which University *so to be created* shall perpetually be under their full and complete control."

But the Legislature so far from attempting to abolish the University, by its own Act expressly includes its maintenance in the objects of its legislation, and remitted to a Constitutional amendment the derivation of authority to replace the former University by a new creation.

The legislative purpose to preserve the University of Louisiana is unequivocally and constantly manifested in every part of the Act of 1884. The title mentions it, the preamble gives prominence to it, and the enacting clauses confirm it. The University is delivered to the Tulane Administrators with all its franchises immunities and property to be governed and developed by them. Its existence is continued, and if it is not perpetuated, the Constitutional amendment alone will confer the power to replace it by another.

But the real question lies behind this, and it is whether the dedication by the Tulane Administrators of all their revenues to the support and maintenance of the University of Louisiana is such dedication to public use as will exempt their property from taxation *proprio rigore*.

It is thus apparent that the question presented in this case is wholly different from that considered and decided in the former one—the question then being whether the property of the Board was taxable, its income being devoted to education, and we held that it was because it was private or corporate income.

The first exemption from taxation by the Constitution is "all public property." Art. 207. The University of Louisiana is not only a public institution but the Constitution has taken it under its protecting care. The entire revenues of the Tulane Administrators are dedicated to its support. The State has contracted with them to deliver this public institution into their hands on the condition that their revenues shall be wholly applied to its maintenance and development, and they have accepted the contract and thereby made the University the usufructuary of all their property. Whatever taxes are payable upon this property must necessarily be paid out of these revenues that have thus

been dedicated to a public use, that is to say, must be paid by the University. Whatever diminution of these revenues is made by the payment of taxes is a diminution *pro tanto* of revenues that have been consecrated to public use, and it is admitted that the taxes for 1885 and 1886 exceed the sum that the State has annually appropriated to the University. So that if taxes are collected from the Tulane Fund and the State continues its appropriation, she will receive money only to pay it back. But the plaintiffs have refused to receive this annual donation from the State since the passage of the Act of 1884, and they have expressly waived all right to it and all right to any future appropriation, and this waiver is stated in the Act to be an additional consideration supporting the contract made therein. Sec. 6.

The plaintiffs have complied with their part of that contract. From August 1, 1884, when they took charge of the University to the close of 1885 they have expended near a hundred thousand dollars (exact figures $98,259.50) upon it, including the cost of insurance and repairs of the buildings, and these were the property of the University before it was turned over to them. Their revenues have conserved its property, paid its current expenses, and have begun to develop a languishing and resourceless institution into vigorous and healthy life.

The usufructuary is bound to pay all the taxes on the property that is subject to the usufruct, Rev. Civ. Code, Art 578, and as the University of Louisiana is the usufructuary of the Tulane property, it follows necessarily that whatever taxes are paid will be paid by the University. The only reduction or diminution of the revenues of the University possible under the contract of the plaintiffs with the State is the diminution that would be wrought by the sanction of the State's demand for taxes. Now the University cannot be taxed. The Constitution created it. Its property is public property within the intendment of the Constitution.

But the property of the Tulane Board is not the property of the University, and it is the property of the Tulane Board of which taxes are demanded.

The title of property does not invariably fix the person who is obliged for the taxes upon it. As we have just stated, the usufructuary and not the titular owner pays on property held in usufruct. Familiar illustrations of the rule are found in those instances where private property is taken for a public road, or a dedication of a lot of ground is made on condition that a court-house is built on it. The ownership remains where it was but the owner pays no taxes.

And these illustrate another proposition, viz: that private property which is subject to taxation becomes exempt by the change that is made in its use. The character of taxability is not ineffaceably stamped on property, and it may be removed by the act of its owner. Whenever he dedicates it to public use it passes under the dominion of the exemption that is accorded to public property. And that is what we meant when in the earlier part of this opinion we said that the question was whether the consecration of the plaintiffs' revenues to a public use did not *proprio vigore* operate an exemption. The Legislature cannot exempt from taxation property that is constitutionally liable to it, but an owner of property may translate it into the domain of constitutional exemption by dedicating it to a public use.

And primarily the Legislature determines what is a public use, and when it has declared what may be so regarded, courts will not interfere except in clear cases of usurpation or abuse of authority. Inhab. of Wayland v. Co. Com. Middlesex, 4 Gray, 501. The Act of 1884 declares that the plaintiffs' revenues are devoted to public use, and as a legal consequence the property that produces them is exempt from taxation unless we are prepared to say that the legislative discretion has been unlawfully or evasively exercised, for that is said to be the criterion by which a court is to test it.

Says Cooley: "Taxes should only be levied for those purposes which properly constitute a public burden. But what is *for* the public good, and *what are public purposes*, and what does constitute a public burden, *are questions which the Legislature must decide upon its own judgment*, and in respect to which it *is* vested with a large discretion which cannot be controlled by the courts, except, perhaps, where its action is clearly evasive, and when under pretense of a lawful authority it has assumed to exercise one that is unlawful." Const. Lim., p. 157.

We do not announce a new legal principle when we hold that property, dedicated to a public use, the revenues of which serve a public purpose, is public property although the title be not in the public. When a judgment creditor of the Charity Hospital levied on its property, we maintained an injunction of its sale saying, "It may not be that the title to the property from which their revenues may in whole or in part be derived is literally in the State; but nevertheless the State owns them, or holds them in trust, though it be for the benefit of those they were established to serve."

"If, then, this Hospital is a State institution. maintained and administered as we have seen by State authority, it is the first duty of

the State to secure and preserve to it the essential conditions of its existence for the purpose for which it was established."  *  *  *

"It is utterly inconsistent with this duty and the protection that the State owes to this institution to suffer it from any cause or at the instance of creditors or other persons, to be deprived of its property, without which its work of beneficence and charity cannot be accomplished." State v. Finlay, 33 Ann. 114.

If it is the first duty of the State to prevent others despoiling the property of an institution under its protetion, much more is it its duty to abstain from despoiling that property itself. The sale of the property of the Charity Hospital at the instance of its creditor would have deprived it of a part of its revenue, and the sanction of the State's demand for taxes of the Tulane property will have a like effect upon the revenues of the University. As we did not allow the one, neither can we the other, and the plaintiffs are entitled therefore to a judgment decreeing the exemption of their property from taxation.

We felicitate ourselves that the way to this consummation has been timely cut by the Legislature so that the stream of Paul Tulane's bounty shall flow on undiminished, while the children of our State through successive generations shall " rise and call him blessed."

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, and that the plaintiffs now have judgment against defendants annulling the assessment of the property donated them by Paul Tulane and decreeing the same exempt from taxation. It is further decreed that the plaintiffs recover their costs in both courts.

Fenner, J., recuses himself, being one of the administrators.

---

### CONCURRING OPINION.

Poché, J. Without yielding any of my views as expressed in my dissenting opinion in the case between the same parties in the 35th Annual p. 672, and believing now as I did then that the property donated by Paul Tulane for the purpose of education of the white youth in the city of New Orleans, is exempt from taxation under the provisions of Article 207 of the Constitution, irrespective of the subsequent contract between the Board of Administrators and the State of Louisiana under the provisions of the Act of the General Assembly of 1884, I concur in the opinion and decree in this case.