h GASKINS, J.
The plaintiff, Morehouse Parish Police Jury (MPPJ), appeals a trial court ruling granting summary judgment in favor of the defendants, Plum Creek Timber Company, Inc.; North American Timber Corporation; Georgia-Pacific Corporation; Plum Creek Southern Timber, LLC; Danny McGrew, sheriff and ex-officio tax collector for Morehouse Parish; and Michael Wooden, tax assessor for Morehouse Parish. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.
FACTS
On June 9, 1994, Georgia-Pacific entered into a lease with the Louisiana Department of Wildlife & Fisheries (DWF) covering 25,480 acres of land in Morehouse Parish. The property was to be used for a wildlife management area (WMA). DWF agreed to fence and manage the property for hunting and fishing by the public. As a result of the lease, Georgia-Pacific and its successors in title claimed exemption from ad valorem taxes under La. R.S. 56:24 which provides that the DWF may contract with a private landowner for use of his land for not less than 25 years to establish a WMA, and may agree that where the use is granted without compensation, the lands may be relieved of all state, parish, and district taxes, with certain exceptions.
Travis M. Holley is an attorney who claimed standing to sue as a resident and property owner in Morehouse Parish. On behalf of himself and the Holley Homestead Trust, he filed a petition , for declaratory judgment and mandamus. He argued that the land was not dedicated to public use and that 12La. R.S. 56:24 is unconstitutional because the legislature may not exempt property from ad valorem taxes. He contended that La. R.S. 56:24 is contrary to La. Const, art. 7, § 21 which sets forth a specific list of certain categories of property which are exempt from ad valorem taxes. He claims that the property in this case does not fall into any of those categories.
Holley named as defendants Georgia-Pacific and its successors in title, the parish sheriff, the parish tax assessor, the DWF, and the Louisiana Attorney General. He sought a ruling that La. R.S. 56:24 is unconstitutional and asked that a writ of mandamus be issued ordering the tax assessor to place the property on the assessment role for collection of ad valorem taxes retroactive to 1994, or alternatively from the date of filing of. the petition. He also sought an order directing the sheriff to collect the tax.
The MPPJ later joined the suit as a plaintiff. Holley remained as counsel for the police jury, but he and the Holley Homestead Trust withdrew, leaving only MPPJ as the plaintiff in this matter. The request for mandamus was denied.
On August 14, 2002, the trial court disposed of numerous exceptions. An exception of nonjoinder was denied. An exception of prescription was referred to the merits. Exceptions of vagueness and ambiguity were denied as moot. Certain defendants who had not answered were ordered to do so.
The parties then filed cross motions for summary judgment. The MPPJ filed a *288 motion for partial summary judgment asking that La. R.S. 56:24 be declared unconstitutional under La. Const art. 7, § 21. The defendants filed a motion for summary judgment, asserting that the lease | scomplied with La. R.S. 56:24 and that the statute is constitutional. They contend that the lease was for a term of 25 years, the property was to be used for a WMA, and that the property owners were entitled to be relieved of ad valorem taxes. They argue that the leased property is dedicated for public use and that it constitutes public lands or other .public property used for public purposes under La. Const, art. 7, § 21.
On February 25, 2003, a hearing was held on the motions for summary judgment, limited to the issue of the constitutionality of La. R.S. 56:24. No decision was rendered. The court ordered the parties to file additional briefs in the matter. The plaintiff filed a fourth supplemental and amending petition raising the issue of whether the lease is for a term of at least 25 years as required by La. R.S. 56:24.. It asserted that, because the lease contained a provision that either party could terminate the lease with 30 days’ notice, it did not contain the 25-year term required by the statute.
It appears that settlement negotiations were pursued, but were not successful. Pretrial orders and briefs were filed into the record. A hearing was held on November 7, 2003. The court indicated that the matter was considered for trial; however, at the conclusion of the hearing, the trial court granted summary judgment in favor of the defendants. The court found that the lease complied with the provisions of La. R.S. 56:24, that the statute is constitutional on its face, and that it is constitutional as applied to the leased property in question, exempting it from ad valorem taxation during the time period that the property is leased to the DWF. The court adopted the pretrial brief of the defendants, Georgia-Pacific Corporation, Plum Creek |4Southern Timber, L.L.C., North American Timber Corporation, and Plum Creek Timber Company, Inc., as its written reasons for judgment. The MPPJ appealed, claiming that the lease did not meet the requirements of La. R.S. 56:24, and that the statute is unconstitutional under La. Const, art. 7, § 21.
SUMMARY JUDGMENT
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,-555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Although the initial burden in summary judgment remains with the mover to show that no genuine issue of material fact exists, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Estate of Levitz v. Broadway, 37,246 (La.App.2d Cir.5/14/03), 847 So.2d 170. Despite the legislative mandate |fithat summary judgments are now favored, factual inferences reasonably drawn from the evi *289 dence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507 (La.12/8/00), 775 So.2d 1049. The court must draw those inferences from undisputed facts that are most favorable to the party opposing the motion for summary judgment. Independent Fire Insurance Co. v. Sunbeam Corp., 1999-2181 (La.2/29/00), 755 So.2d 226; Estate of Levitz v. Broadway, supra.
CONSTITUTIONALITY OF LA. R.S. 56:24
The MPPJ asserts that La. R.S. 56:24 is unconstitutional on its face. It argues that La. Const, art. 7, § 21 describes property that is exempt from taxation. According to the police jury, the property at issue here does not fall under any of those definitions. Specifically, it argues that the land is not “public property or other public lands” exempt from taxation under this provision. The MPPJ further contends that the legislature is powerless to grant an exemption from taxation, therefore La. R.S. 56:24 is unconstitutional. These arguments are without merit.
An elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutional. Unless the fundamental rights or privileges and immunities of a person are involved, a strong presumption exists that the legislature in adopting legislation has acted within its constitutional authority. Polk v. Edwards, 626 So.2d 1128 (La.1993).
|fiThe legislature of Louisiana, elected by the state’s citizenry, may enact any legislation that the state constitution does not explicitly prohibit. Thus, in order to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature. Polk v. Edwards, supra.
The party challenging the constitutionality of a statute bears the burden of proving clearly that the legislation is invalid or unconstitutional. Specifically, the party must rely upon a constitutional provision which restricts the power of the legislature to enact the particular legislation and must establish that the legislation is barred by such provision. Any doubt as to the legislation’s constitutionality must be resolved in favor of constitutionality. Polk v. Edwards, supra; Board of Directors of the Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of the State of Louisiana, 529 So.2d 384 (La.1988).
Accordingly, in an attack upon a legislative act as falling within an exception to the legislature’s otherwise plenary power, an opponent must establish more than that the constitutionality of the legislation is fairly debatable. The opponent must establish clearly and convincingly that the constitutional aim was to deny to the legislature the power to enact the legislation. Board of Directors of the Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of the State of Louisiana, supra.
The legislature is powerless to create tax exemptions or enlarge the scope of those provided by the Louisiana Constitution. Kansas City Southern Railway Company v. Louisiana Tax Commission, 95-2319 (La.App. 1st Cir.6/28/96), 676 So.2d 812.
La. R.S. 56:24 provides:
The commission [DWF] may contract with any private landowner for the use of his lands for a term of not less than twenty-five years for the purpose of establishing wildlife management areas, *290 and may agree, where such use is granted without compensation or payment therefor, that the lands shall be relieved of all state, parish, and district taxes, except in cases where a tax has been contracted to be levied thereon for the retirement of a bond issue or for other outstanding debts or obligations, so long as the lands are used for the purpose stated. Any existing agreement to the foregoing effect is validated.
In order to find that La. R.S. 56:24 unconstitutionally grants an exemption from ad valorem taxation, the plaintiff must show that the statute is prohibited by a provision of our state constitution. La. Const, art. 7, § 21 provides in pertinent part:
In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation: (A) Public lands; other public property used for public purposes.
Exemptions from taxation are strictly construed, an exemption being an exceptional privilege which must be clearly and unequivocably and affirmatively established. Hibernia National Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15 (1940). The language of La. Const, art. 7 § 21 sets forth a mandatory prohibition against exemptions of any property other than that specifically enumerated and is thus a self-executing constitutional provision. Prohibitive or negative constitutional provisions are self-executing as no supplementary legislation is needed to give them effect. Given the mandatory prohibition set forth in La. Const. art. 7, § 21, the legislature is prohibited from granting any exemptions from ad valorem taxation different from the exclusive exemptions established in the Louisiana Constitution. In re Pitre, 93-2322 (La.1/14/94), 630 So.2d 700; Kansas City Southern Railway v. Louisiana Tax Commission, supra.
La. Const, art. 7, § 21 provides that public property or other public lands are exempt from ad valorem taxation. We must determine whether the property at issue here, owned by the private defendants, but leased to the DWF for use as a WMA, is public property. The jurisprudence indicates that privately owned property may be dedicated to public use and may qualify for the ad valorem tax exemption granted by La. R.S. 56:24. Also, no particular form of dedication is necessary.
The character of taxability is not ineffaceably stamped on property, and it may be removed by the act of its owner. Whenever he dedicates it to public use, it passes under the dominion of the exemption that is accorded to public property. Administrators of the Tulane Education Fund v. Board of Assessors, 38 La.Ann. 292 (La.1886). The court in Tulane held that property, dedicated to public use, the revenues of which serve a public purpose, is public property although the title “be not in the public.”
It is not necessary that title to the property be vested in the state or in any of its political subdivisions in order for it to be exempt as public property. If the property is consecrated to public use, it is not taxable irrespective of the nature of the ownership. Warren County, Mississippi v. Hester, 219 La. 763, 54 So.2d 12 (1951), cert. denied, 342 U.S. 877, 72 S.Ct. 167, 96 L.Ed. 659 (1951).
No particular form of deed, or deed at all, is necessary for the dedication of land to the public; it suffices that the owner permits the land to be used by the public with the intention of making the dedication. Dedications to public use and servitudes in favor of the public are not governed by the strict rules which apply to *291 private property; the visible signs of dedication and open use of the property by the public supply the place of both title and registry. Joyce v. Brothers Realty Company, 127 So.2d 756 (La.App. 3d Cir.1961).
There is no sacramental form to be followed in dedicating property to public use in order that the dedication be effective. Furthermore, there is no requirement that the title be in the public, nor is it necessary that the word “dedicate” be used as it is not decisive of the character of the conveyance of the property to the city. Joyce v. Brothers Realty Company, supra.
A WMA is defined in La. R.S. 56:8(108) as:
[A]ny area set aside, maintained, and supervised by the commission for the purpose of managing and harvesting wild birds, wild quadrupeds, fish, and other aquatic life under controlled conditions to afford maximum public hunting and fishing opportunity. [Emphasis supplied.]
The public is informed of the establishment of a WMA by the procedure set forth in La. R.S. 56:109 which provides:
The commission [DWF] may establish, maintain, and manage any state wildlife management area, wildlife refuge, public hunting ground, or outdoor recreation area, as it deems proper for wildlife management purposes. With the approval of the governor, it may lease, buy, or accept donation of, and set apart, any other lands suitable and desirable for such purposes and thereon establish, maintain, and operate such areas. The public shall be notified of the fact of the establishment of such areas by publication of a proclamation by the governor, describing the exact location and description of the lands setlinapart and the objects and purposes of the dedication, for thirty days in the official journal of the state and the official journal of the parish where the lands are located. The commission shall cause suitable signs to be placed at reasonable distances along the boundaries of the lands and at roads and other entrances for the information of the public. No person shall willfully or maliciously remove, destroy, or deface any sign or notice placed or posted. The commission shall authorize persons over the age of sixty to use trails in the wildlife management areas which are set aside for use exclusively by disabled persons.
In the present case, the lease agreement demonstrates that the land was intended to be used by the DWF for a public purpose, the establishment of a WMA. The terms of the agreement specify that the DWF is to establish and locate a WMA on the land by reason of development, improvement, preservation, and protection of the lands in their natural state for the propagation of wildlife at the expense of the DWF.
Although Louisiana Attorney General opinions are merely advisory and not binding, the courts of this State have recognized their persuasive authority. City of New Orleans v. Board of Directors of Louisiana State Museum, 1998-1170 (La.3/2/99), 739 So.2d 748. We note that La. Att. Gen. Op. 1946-48, pp. 1024-1025 provides that contracts with property owners for fish and game preserves serve a sufficient public purpose to bring the property within the constitutional exemption from taxation.
We conclude, as did the trial court, that the lease of private property to the DWF for the public purpose of establishing a WMA falls within the exemption from taxation contained in La. Const, art. 7, § 21. The legislature, in enacting La. R.S. 56:24, specifically granting a tax exemption on *292 property used for a WMA, did not exceed its authority. La. R.S. 56:24 is |nm compliance with and authorized by La. Const, art. 7, § 21. The trial court did not err in finding the statute to be constitutional.
REQUIREMENTS OF LA. R.S. 56:24
The MPPJ claims that the trial court erred in finding that the lease in this matter complied with the requirements of La. R.S. 56:24. The MPPJ acknowledges that the wording of La. R.S. 56:24 grants an exemption from ad valorem taxes under certain conditions. The plaintiff argues that the lease does not comply with the statute because it does not have a term of at least 25 years. Although the lease specified its term was 25 years, it also contained a clause allowing either party to terminate the lease with a 30-day notice. Therefore, the MPPJ urges that this was nothing more than a monthly lease. Because the requirements of the statute were not met, MPPJ argues that the ad valorem tax exemption should not have been granted.
The lease provides:
That the LESSOR, in consideration of the benefits, uses and advantages, accruing to LESSOR by reason of the LESSEE establishing and locating a Wildlife Management Area on the above described lands, and by reason of the development, improvement, preservation and protection of said above described lands in their material state for the propagation of wildlife at the expense of the LESSEE in accordance with existing laws, DOES HEREBY LEASE, LET AND HIRE the said above described lands for the purpose of establishing a Wildlife Management Area thereon for a period of twenty-five (25) years, beginning on the 9th day of June, 1994, and ending on the 8th day of June, 2019, unto the LESSEE here present, accepting and acknowledging delivery and possession thereof.
A listing of conditions of the lease follows, including provisions that:
[T]his lease may be terminated upon thirty (30) days written notice by LESSOR or LESSEE.
|iaThe trial court adopted the reasoning of the defendants who argued that the 30-day notice provision was only a condition of the lease and was not the term. According to the defendants, La. C.C. art. 2674 provides:
To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him. [Emphasis supplied.]
The defendants maintain that the “certain time” of the lease was 25 years and the “certain price” was the defendants’ relief from the payment of all state, parish and district taxes. The defendants argue that the lease contained other conditions such as specifying action that the lessee is required to take in furtherance of the obligation to supervise and manage the wildlife thereon; an indemnity provision; provisions as to the lessee’s right, at the termination of the agreement, to remove any improvements installed during the lease; the lessor’s right to mine minerals; and the right of the lessor or lessee to terminate the lease upon 30 days’ written notice.
The defendants cite La. C.C. art. 2684 which provides that:
The duration and the conditions of leases are generally regulated by contract, or by mutual consent.
They argue that this language indicates that the legislature made a distinction between the duration or term of a lease and other conditions of the lease. The defen *293 dants contend that the 30-day notice for cancellation of the lease is only a condition which the parties are required to carry out in good faith. They maintain that a determination that the lease is only for 30 days would be contrary to the intent of the parties.
11sLa. C.C. art. 2024 provides:
A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party. [Emphasis supplied.]
La. C.C. art. 2024 specifically contemplates a contract without a specified term. To include such a provision in a lease agreement for a fixed term makes both provisions ambiguous.
The Louisiana Civil Code provides that the interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. However, a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, and the conduct of the parties before and after the formation of the contract. La. C.C. art. 2053.
When the terms of a written contract are susceptible of more than one interpretation, or where there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, extrinsic evidence is admissible to clarify the ambiguity or to show the parties’ intent. Such intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. Head’s Video Poker Company, Inc. v. Jordan, 31,745 (La.App.2d Cir.3/31/99), 731 So.2d 946.
In the case of Head’s Video Poker Company, Inc. v. Jordan, supra, this court examined an ambiguous phrase in a three-year lease that the lessor claimed abrogated the term of the lease. In that case, a lease of space for video poker machines provided that the term of the agreement was for three years, if appropriate. The lessor claimed that this provision was a suspensive condition dependent solely upon his whim, therefore creating a nullity under La. C.C. art. 1770.[1] We found that the phrase was ambiguous and examined the evidence to determine the intent of the parties. We then concluded that the parties in fact intended to enter into a lease for three years, contingent upon obtaining the appropriate licensing to operate the video poker machines. We concluded that the term “if appropriate” was not a sus-pensive condition dependent upon the lessor’s whim, making the agreement null.
In the present case, the plaintiff argues that the provision allowing either party to terminate the lease at will abrogates the language specifying that the term of the lease is 25 years. The MPPJ contends that since the lease has no term, it does not meet the requirements of La. R.S. 56:24 and therefore, DWF is not entitled to the ad valorem tax exemption.
*294 We find that the inclusion of a 25-year term of the lease and a clause allowing either party to terminate the lease with 30 days’ notice creates an 11fiambiguity as to the intent of the parties. Either a term of 25 years was intended and the termination-at-will language is not valid or the parties intended a month-to-month lease, rather than a 25-year term. This ambiguity creates a genuine issue of material fact which precludes summary judgment on this issue. We remand this matter to the trial court for proceedings to determine the intent of the parties in executing this lease. If the intent was to specify a term of 25 years, then the requirements of La. R.S. 56:24 regarding exemption from ad valorem taxation have been met. If the parties had no intent to enter into a 25-year lease, then the defendants are not entitled to the tax exemption found in the statute.
CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment finding that La. R.S. 56:24 is constitutional under La. Const, art. 7, § 21. We reverse the granting of summary judgment that the lease sub judice complied with the 25-year minimum requirement of La. R.S. 56:24. The case is remanded to the trial court for further evidentiary proceedings in compliance with this opinion. Costs are assessed one-half to the plaintiff and one-half to the defendants.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. La. C.C. art. 1770 provides:
A suspensive condition that depends solely on the whim of the obligor makes the obligation null.
A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.