62 So.3d 261 (2011)
ABUNDANCE SQUARE ASSOCIATES, L.P. and Treasure Village Associates, L.P.
v.
Erroll G. WILLIAMS, In his Official Capacity as Assessor for the Third Municipal District for the City of New Orleans, and the City of New Orleans.
No. 2010-CA-0324.
Court of Appeal of Louisiana, Fourth Circuit.
March 23, 2011.
James M. Garner, Steven I. Klein, Christopher T. Chocheles, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., New Orleans, LA, for Plaintiffs/Appellants.
Kenneth E. Pickering, Pickering & Cotogno, New Orleans, LA, for Defendant/Appellee, Erroll G. Williams, etc.
*262 (Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DANIEL L. DYSART).
MICHAEL E. KIRBY, Judge.
The plaintiffs, Abundance Square Associates, L.P. ("Abundance Square") and Treasure Village Associates, L.P. ("Treasure Village")[1], filed suit against the City of New Orleans ("the City") and Erroll G. Williams, in his capacity as Assessor for the City's Third Municipal District, challenging the 2008 ad valorem tax assessments on housing development properties owned and operated by the plaintiffs. From a district court judgment that upheld the assessments, the plaintiffs now appeal.

FACTS AND PROCEDURAL HISTORY
The Desire Housing Projects were constructed in New Orleans in 1949 as part of the United States Housing Program. At the time, the City executed a Cooperation Agreement with the Housing Authority of New Orleans ("HANO"), the local housing authority funded by the U.S. Department of Housing and Urban Development ("HUD"). Pursuant to the Cooperation Agreement, HANO would own and operate housing projects, including Desire, through which the City could provide low-rent housing. The Cooperation Agreement specifically stated that the housing projects would be "exempt from all real and personal property taxes levied and imposed by any taxing body."
In 1992, the federal government launched Hope VI, a program aimed at replacing dilapidated, obsolete public housing projects with new, redesigned mixed income housing units. Pursuant to Hope VI, HUD issued grants to cities and local public housing authorities for physical revitalization and management improvements. HUD also encouraged the housing authorities to develop public/private partnerships with private sector developers and management firms to build, own and operate the new units.
In the late 1990's, the City razed Desire as part of a revitalization plan under the Hope VI program. At the request of HANO's general counsel, the City Attorney issued an opinion on September 16, 2002, stating that the 1949 Cooperation Agreement was still in effect and the new low-rent housing units to be constructed as "part of the Desire Hope IV[sic] Revitalization Plan can be included as a part of the `Project' as defined in the Cooperation Agreement. ..."
In October 2002, HANO executed a Ground Lease and a Regulatory and Operating Agreement with Abundance Square, wherein HANO leased ninety-eight (98) acres of real property, the site of the former Desire Housing Projects, to Abundance Square. The agreement provided that, HANO, with the assistance of Abundance Square, would develop the real property into seventy-three (73) multi-family rental units that Abundance Square would operate and manage (the "Abundance Square Apartments"). Significantly, the Ground Lease provided that Abundance Square would own the Abundance Square Apartments until the lease expired in 2077.
Under the Abundance Square Regulatory and Operating Agreement, all seventy-three (73) units in the Abundance Square *263 Apartments had to be operated as "qualified low-income units" under Section 42 of the U.S. Internal Revenue Code. Of the qualified low-income units, forty-eight (48) had to be operated as "public housing" under Section 3(b) of the U.S. Housing Act and fourteen (14) as Section Eight  "project based vouchers."
In August 2003, HANO executed a similar Ground Lease and Regulatory and Operating Agreement with Treasure Village, wherein HANO leased real property, also part of the former Desire site, to Treasure Village. Pursuant to the agreement, HANO and Treasure Village developed the property into thirty-four (34) multifamily units that Treasure Village operated and managed (the "Treasure Village Apartments"). The Ground Lease provided that Treasure Village would own the Treasure Village Apartments until the lease expired in 2088.
The Treasure Village Regulatory and Operating Agreement required all thirty-four (34) units to be operated as qualified low-income units and, of those, twenty-three (23) had to be operated as public housing and six (6) as Section Eight  project based vouchers.
For the 2008 tax year, the City assessed ad valorem taxes in the amount of $25,508.00 on the Abundance Square Apartments and $11,771.43 on the Treasure Village Apartments. The plaintiffs paid the taxes under protest and filed suit, alleging that the properties are exempt from ad valorem taxation pursuant to Louisiana Const. Art. VII, § 21(A).[2]
At the trial, Assessor Williams testified that improvements on immovable property are exempt from taxation only if the improvements are owned by a public entity, or owned by a non-profit corporation that used the property exclusively for a charitable purpose. He explained that the Abundance Square and Treasure Village Apartments were taxed because they are owned by private entities. In ruling, the trial court stated that it would "follow the opinion of the assessor" and rendered a written judgment denying the plaintiffs' claims to recover the 2008 ad valorem taxes.

ASSIGNMENTS OF ERROR
The plaintiffs raise the following assignments of error on appeal:
1. The trial court erred in holding that the mere fact that a private entity owns property is enough to preclude the property from being exempt from ad valorem taxes pursuant to La. Const. Art. VII, § 21(A).
2. The trial court erred in failing to find that the properties should be exempt because the properties (or, at minimum, the "public housing" units therein) have "vested" in the public.
3. The trial court erred in failing to find that the properties serve a public purpose.

LAW AND DISCUSSION
Louisiana Const. Art. VII, § 21(A) provides that "[p]ublic lands [and] other public property used for public purposes" are exempt from ad valorem taxation.
"Exemptions from taxation are strictly construed, an exemption being an exceptional privilege which must be clearly and unequivocably and affirmatively established." *264 Holley v. Plum Creek Timber Co., Inc., 38,716, p. 7 (La.App. 2 Cir. 6/23/2004), 877 So.2d 284, 290, citing Hibernia Nat'l Bank in New Orleans v. Louisiana Tax Comm'n, 195 La. 43, 196 So. 15 (1940).
To be exempt under La. Const. Art. VII, § 21(A), the property must be public, and it must be used for a public purpose. Slay v. Louisiana Energy and Power Auth., 473 So.2d 51, 53 (La.1985).
The Louisiana Supreme Court acknowledged that property can "vest" in the public even though the "title be not in the public." Adm'rs of Tulane Educ. Fund v. Board of Assessors, 38 La. Ann. 292 (1886), 1886 WL 4310, *4 (hereinafter "Tulane Administrators"). In Tulane Administrators, the Board of Administrators of the Tulane Education Fund ("the Administrators") filed suit to annul the 1885 tax assessment imposed on property donated by Paul Tulane to promote the education of the white youth in New Orleans. The Administrators previously challenged the 1883 tax assessment on the same property and the Louisiana Supreme Court held that the property standing alone did not have a constitutional tax exemption. See State ex rel. Board of Admrs. Tulane Ed. Fund v. Bd. Of Assessors, 35 La. Ann. 668 (La.1883).
Shortly thereafter, however, the Louisiana Legislature passed Act 43 of 1884, which transferred the ownership and operation of the "University of Louisiana"[3] to the Administrators. Pursuant to Act 43, the Administrators, in a contract with the State, agreed to devote all their revenues to the public purpose of maintaining and developing the University of Louisiana. Tulane Administrators, 1886 WL 4310, at *1. Though the expressed purpose of Act 43 was "fostering, maintaining and developing the University of Louisiana," the Court noted the "evident purpose" was "to effect an exemption of the [Administrators'] property from taxation." Id.[4]
The issue before the Court was "whether the dedication by the Tulane Administrators of all their revenues to the support and maintenance of the University of Louisiana is such dedication to public use as will exempt their property from taxation proprio vigore." Id. at *2. The Court explained that the "Legislature cannot exempt from taxation property that is constitutionally liable to it, but an owner of property may translate it into the domain of constitutional exemption by dedicating it to a public use." Id. at *4. The Court reasoned:
The character of taxability is not ineffaceably stamped on property, and it may be removed by the act of the owner. Whenever he dedicates it to public use it passes under the dominion of the exemption that is accorded to public property.
Id. Because the Administrators dedicated its property to public use by "consecrating" all revenues to pay for the maintenance and operation of the university, the Court held that the university constituted *265 exempt public property even though "the title be not in the public." Id.
In Holley, supra, Georgia-Pacific Corporation, a private landowner, leased 25,480 acres of land to the Louisiana Department of Wildlife and Fisheries ("LDWF") to be used for a wildlife management area ("WMA") as defined in La. R.S. 56:8(108). LDWF agreed to maintain and manage the property for hunting and fishing by the public. As a result of the lease, Georgia-Pacific claimed an exemption from ad valorem taxes under La. R.S. 56:24[5]. A local resident filed suit, claiming that Georgia-Pacific's land was not dedicated to public use and that La. R.S. 56:24 was unconstitutional because the legislature could not exempt property from ad valorem taxes. The plaintiff argued that the property fell into none of the categories of tax exempt property specified in La. Const. Art. VII, § 21.
The Second Circuit Court of Appeal, like the trial court, concluded that the lease of private property to the LDWF for the public purpose of establishing a WMA fell within the exemption from taxation contained in La. Const. Art. VII, § 21.
The Court determined that the legislature, in enacting La. R.S. 56:24, specifically granting a tax exemption on property used for a WMA, did not exceed its authority, and upheld the constitutionality of the statute. Holley, 38,716, p. 10, 877 So.2d at 291-92. The Court acknowledged that "[n]o particular form of deed, or deed at all, is necessary for the dedication of land to the public; it suffices that the owner permits the land to be used by the public with the intention of making the dedication." Id., 38, 716, p. 9,877 So.2d at 290. The Court further noted that property "consecrated to public use [] is not taxable irrespective of the nature of the ownership." Id., citing Warren County, Mississippi v. Hester, 219 La. 763, 54 So.2d 12 (1951).
In Warren County, supra, Warren County, a political subdivision of the State of Mississippi, owned a toll bridge spanning the Mississippi River between Vicksburg, Mississippi, and the town of Delta, in Madison Parish, Louisiana.[6] In 1948, the county sued to recover the taxes it paid to Madison Parish under protest, claiming that the bridge was tax exempt because it was "dedicated to a public use." Warren County, 219 La. 763, 773, 54 So.2d 12, 15 (1951).
In evaluating the claim, the Louisiana Supreme Court reiterated the well-settled jurisprudence that "`[p]roperty dedicated to public use, the revenues of which serve a public purpose, is public property, although the title be not in the public.'" Id. at 774, 54 So.2d at 15 (citation omitted). Because Warren County used a substantial portion of the toll revenues to satisfy the debt it incurred in acquiring the bridge, the Court concluded the toll bridge was not dedicated to public use. The Court stated, "[i]f the revenues derived from the tolls of the bridge were being used exclusively *266 for its maintenance and economic operation, it might be reasonable to rule that there has been a dedication. But those are not the facts of the case." Id. at 775-76, 54 So.2d at 16. Thus, as it did in Tulane Administrators, the Court considered how the money derived from property was used in determining whether that property was dedicated to the public use and, therefore, tax exempt.
The issue of whether a local housing authority's development, maintenance and operation of low-rent housing served a public purpose was addressed by the Supreme Court in State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725 (1938). In that case, the Louisiana Legislature passed Act 275 of 1936, the "Slum Clearance" or "Housing Authority" Act, which authorized certain cities to create a local housing authority if they found a lack of safe or sanitary dwelling accommodations in the city available to low-income families at affordable rental rates. After the City of New Orleans created HANO to build "low-rent housing," i.e., housing projects, the Louisiana Attorney General filed suit, claiming that appropriating funds and expropriating private land to build housing projects would not serve a public purpose. The Supreme Court disagreed, concluding that HANO's building and maintenance of the projects to "eradicate the slum menace" for health and safety reasons served a public purpose because the City, through HANO, was performing a primary function of municipal government. Id. at 735, 182 So. at 733.
The record indicates that Assessor Williams taxed the Abundance Square and Treasure Village Apartments because they are owned by private, for-profit partnerships and that he did not consider whether or not they served a public purpose. According to Mr. Williams, the question of whether the improvements, i.e., rental units, on the immovable property are taxable is "purely a determination of ownership."
Louisiana jurisprudence holds that ownership alone is not the determining factor and that privately owned property may be dedicated to public use to attain tax exempt status. See Tulane Administrators, supra; Holley, supra. Moreover, how the revenue derived from private property is used may be considered in determining whether the property is dedicated to public use. See Warren, supra.
The evidence discloses that the Abundance Square and Treasure Village Apartments are all "tax credit" units, meaning IRS regulations prohibit an owner from renting the unit to anyone earning more than sixty (60) percent of the area median income (AMI). Pursuant to the respective Regulatory and Operating Agreements, a majority of the units in the Abundance Square Apartments (48 of 73) and Treasure Village Apartments (23 of 34), must be "PHA-Assisted Units," which are defined as a "dwelling unit in the Development designated as such by Owner and operated and maintained as a `public housing' unit in accordance with Public Housing Requirements."[7]
Mr. Ralph Massaro, the controller for Interstate Realty Management Company, the property manager for the Abundance Square and Treasure Village Apartments, testified that the rents paid by the residents of the public housing units are restricted by their income level. He explained that the amount paid by each public housing resident differs depending on their income so that a person making *267 ten percent of the AMI will pay less that the person making thirty-five percent of it. According to Mr. Massaro, although a person may qualify for Section 8 voucher assistance, he (she) may not be eligible for a PHA-Assisted Unit, which is reserved for those in the lowest income tiers.
The Regulatory and Operating Agreements also recognize that, in operating the public housing units, the owners (plaintiffs) will not likely be able to recoup the operating costs and, thus, HANO will subsidize the operation of the PHA-Assisted Units.[8] However, in the event the owners (plaintiffs) make a profit in operating the PHA-Assisted Units, the Regulatory and Operating Agreements mandate that those profits be deposited into the "Affordability Reserves," an escrow account whose funds are to be used solely for the benefit of the PHA-Assisted Units.[9] Moreover, if the owners (plaintiffs) fail to comply with the specific terms of the Regulatory and Operating Agreements, the Ground Leases will terminate, effectively vesting ownership of the rental units in HANO.[10]
Assessor Williams does not dispute that the Regulatory and Operating Agreements prohibit the plaintiffs from earning a profit from operating the public housing or PHA-Assisted Units. Likewise, he does not dispute that the plaintiffs have used the money derived from the rental of the public housing units strictly for the operation and maintenance costs of those units.
To the extent the plaintiffs are contractually and legally obligated to operate and maintain forty-eight (48) rental units in the Abundance Square Apartments and twenty-three (23) in the Treasure Village Apartments as public housing or PHA-Assisted Units, we conclude those units have been dedicated to public use, clearly serve a public purpose and, thus, are exempt from ad valorem taxes under Louisiana Const. Art. VII, § 21(A).

DECREE
Accordingly, the judgment of the trial court is amended, in part, to grant Abundance Square a return of the 2008 ad valorem taxes paid under protest on the forty-eight (48) PHA-Assisted Units in the Abundance Square Apartments. The judgment is further amended to grant Treasure Village a return of the 2008 ad valorem taxes paid under protest on the twenty-three (23) PHA-Assisted Units in Treasure Village Apartments. Insofar as the judgment denies the plaintiffs' claims for a refund of the 2008 ad valorem taxes paid on the remaining units in the Abundance Square and Treasure Village Apartments, the judgment is affirmed.
AFFIRMED AS AMENDED.
ARMSTRONG, C.J., Concurs in Part and Dissents in Part.
I would affirm the judgment of the trial court in its entirety. Abundance Square Associates, L.P., Treasure Village Associates, L.P., and Michaels Development *268 Company are all for-profit entities. Exemptions from taxation are strictly construed, an exemption being an exceptional privilege which must be clearly and unequivocally and affirmatively established. Holley v. Plum Creek Timber Co., 38,716 (La.App. 2 Cir. 6/23/2004), 877 So.2d 284; Hibernia National Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15 (1940).
I find that Holley, supra, and Administrators of Tulane Educational Fund v. Board of Assessors, 38 La.Ann. 292 (1886), the two cases which form the foundation of the plaintiffs' case, are not persuasive.
Holley, supra, concerns a special tax exemption granted to private landowners who lease property to the State Department of Wildlife and Fisheries without compensation for use as wildlife management areas. This special statutory exemption has no relevance to the instant case.
Administrators of Tulane Educational Fund involves a contract between the State and the Tulane Administrators to take over the operation of the University of Louisiana. The Louisiana Supreme Court noted that:
The Act of 1884 declares that the plaintiffs' revenues are devoted to public use, and as a legal consequence the property that produces them is exempt from taxation unless we are prepared to say that the legislative discretion has been unlawfully or evasively exercised, for that is said to be the criterion by which a court is to test it.
Id. As was the case with Holley, the special contract and statute involved in Administrators of Tulane Educational Fund distinguish it from the instant case.
Based on the foregoing, I find no error in the judgment of the trial court. Therefore, I respectfully concur in only that part of the majority opinion denying the plaintiffs' claims for a refund of the 2008 ad valorem taxes paid on the non-PHA-Assisted Units. I respectfully dissent from that portion of the majority opinion ordering a return of the 2008 ad valorem taxes paid under protest on PHA-Assisted Units by Abundance Square and Treasure Village.
NOTES
[1] Abundance Square and Treasure Village are for-profit Louisiana limited partnerships affiliated with Michaels Development Company, a New Jersey Corporation and the largest affordable housing developer in the United States.
[2] At the trial, Assessor Williams acknowledged that the plaintiffs are entitled to a revised tax bill for 2008 because the $25,508.00 and $11,771.43 assessments inadvertently included assessments on the publicly owned land, which is tax exempt. The parties stipulated that the plaintiffs paid the full amounts under protest and are due a refund for the taxes paid on the land.
[3] The Louisiana Constitution of 1845 provided that a university was to be established in New Orleans named the University of Louisiana. The Louisiana Constitutions of 1864 and 1868 repeated the injunction to the Louisiana Legislature to maintain it. The Louisiana Constitution of 1879 recognized the University of Louisiana and, for the first time, provided for an annual limited appropriation of $10,000.00.
[4] The Louisiana Legislature, by enacting Act 43 of 1844, contemplated creating a "new" university through a constitutional amendment and re-designating the University of Louisiana as "Tulane University of Louisiana." See Tulane Administrators, 1886 WL 4310, at* 1-2.
[5] La. R.S. 56:24 provides:

The [LDWF] may contract with any private landowner for the use of his lands for a term of not less than twenty-five years for the purpose of establishing wildlife management areas, and may agree, where such use is granted without compensation or payment therefor, that the land shall be relieved of all state, parish, and district taxes, except in cases where a tax has been contracted to be levied thereon for the retirement of a bond issue or for other outstanding debts or obligations, so long as the lands are used for the purpose stated. Any existing agreement to the foregoing effect is validated.
[6] In 1947, Warren County had issued $7,000,000.00 in revenue bonds to purchase the bridge from Vicksburg Bridge Company, a Delaware Corporation.
[7] See Abundance Square Regulatory and Operating Agreement § 1.43 and Treasure Village Regulatory and Operating Agreement § 1.45.
[8] Paragraph E under the RECITALS section of the Regulatory and Operating Agreements provides:

Because [Plaintiffs] will be obligated to lease the PHA-Assisted Units to families whose rents are restricted and may be less than the operating costs of the PHA-Assisted Units, [HANO] has agreed to subsidize the operation of the PHA-Assisted Units through the provision of operating assistance provided to it by HUD, subject to the provisions of this Agreement.
[9] See § 5 of the Abundance Square and Treasure Village Regulatory and Operating Agreements.
[10] See § 18B of the Amended and Restated Ground Leases executed by and between HANO and the plaintiffs.