11 MURRAY, Judge.
This litigation arises from a 1983 real estate transaction involving the Industrial Development Board of the City of New Orleans, Inc. (the Board),' Days Inns of America, Inc. (Days Inns), and both the City of New Orleans (the City) and its Third District Tax Assessor (the Assessor). In this appeal from the trial court’s grant of a summary judgment and related exceptions, the issue is whether the Bank of New York, current trustee for the bondholders who financed the transaction (the Trustee), is obligated to make payments in lieu of taxes (PILOT payments) previously owed by the lessee, Days Inns, prior to its default under the 1988 agreements.- We affirm the judgment for the reasons that follow.
FACTS AND PROCEDURAL HISTORY
On March 7, 1983, the Board purchased a parcel of property in eastern New Orleans for the purpose of erecting and operating a hotel. The purchase was financed by the Board’s sale of revenue bonds pursuant to an Indenture of Mortgage and Pledge, in which the Board granted a mortgage on the immovable property and pledged the revenue from the project as security for repayment of the bonds. Hibernia National Bank (Hibernia) was made Trustee for the bondholders.
On the same date, the Board and Days Inns ratified their January 1, 1983 | ¡¡Lease Agreement, under which Days Inns was to erect and operate the hotel until January 1, 2003. Because the Board was organized pursuant to La. R.S. 51:1151 et seq., which provides for the establishment of “Municipal and Parish Industrial Development Boards,” the property it acquired was exempt from ad valorem taxes by virtue of La. R.S. 51:1160, which provides in pertinent part:
The [industrial development] corporation is hereby declared to be performing a public function on behalf of the municipality or parish with respect to which the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom *72 and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such authorities for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made.
Pursuant to this statute, Days Inns agreed to make PILOT payments in a Subordinate Agreement that was executed on January 1, 1983, and was also signed by the authorized representatives of the Board, the City of New Orleans, and the Third District Tax Assessor.
The project proceeded as planned, and all PILOT payments were made through 1990. However, Days Inns filed for bankruptcy in 1991 and failed to make the payment due for that year, resulting in adjudication of the property to the City for nonpayment of taxes in December 1992. Despite this adjudication, the Board was sent additional bills for taxes, interest and penalties due for 1992 through 1994.
In February 1994, Hibernia filed suit against the City and the Assessor, asserting that “since March 7, 1983, the Project was and remains exempt from any|sand all ad valorem taxes by virtue of Article VII, Sec. 21(A) of the Louisiana Constitution” because it is owned by a public corporation that qualifies as a unit of local government. The only relief sought was the nullification of the tax assessments, bills and liens for 1991 through 1994 and for cancellation of the purported adjudication of the property to the City. On March 25, 1994, a consent judgment, jointly submitted by counsel for Hibernia, the City and the Assessor, was rendered, granting the relief prayed for. However, the judgment further provided that:
Nothing contained herein shall be deemed to prohibit the rights of defendant Assessor to continue to value the above property for the years 1991 through 1994 or subsequent years for purposes of the Subordinate Agreement entered into as of January 1, 1983, by and among defendants Department of Finance and Assessor with the Board of Directors of the Industrial Development Board of the City of New Orleans, Louisiana, Inc., and Days Inns of America, Inc., or to abridge or otherwise modify any rights or remedies either defendant has or might have to enforce the Subordinate Agreement.
The instant suit was filed on February 24, 1999 by Hibernia’s successor trustee, the Bank of New York, against the Assessor, the City and the Board. The petition recites the above facts, and further alleges that the defendants have continued to assess the property and issue tax bills for 1991 through 1999, and appear to have again adjudicated the property to the City. It is asserted that these actions are in defiance of the prior judgment and viola-tive of Article VII, Section 21(A) of the Constitution and La. R.S. 51:1151 et seq. Claiming that the assessments and liens cloud the Board’s title and impair the bondholders’ interests in the property, the Trustee seeks, by judgment or by a writ of mandamus, (1) the nullification of all tax assessments, bills, liens and adjudications since 1990; and (2) an order prohibiting the defendants “from ever assessing the Property and collecting taxes thereon so long as the Property is owned by the Development | ¿Board.” The three defen *73 dants jointly answered the suit in April 1999, generally admitting the chronology of events, but specifically denying the Board’s status as a public body and the claims that the property is exempt from taxation.
On June 2, 1999, the Trustee filed the motion for summary judgment now at issue, supported by the numerous documents referenced in its pleadings as well as affidavits of two attorneys attesting to the facts set forth in the petition. The defendants responded with a joint opposition to the motion, now conceding that the Board “is a public corporation performing a public function .... [and that] property titled in the name of the Board is not subject to taxation.” In addition to asserting substantive arguments, they contended that summary judgment was precluded by the existence of factual disputes regarding Days Inns’ default and subsequent bankruptcy, as well as the Trustee’s liability arising out of that proceeding.
On the same date that the joint opposition was filed, however, the Assessor, through separate counsel, filed incidental demands against the Trustee, the Board, and Days Inns. He claimed that Days Inns “owes all amounts due under the Subordinate Agreement from 1991 to the present,” and that, upon default by that entity, the Trustee and the Board each had a duty under their respective contracts “to pay or cause to be paid the payments in lieu of taxes.” The Assessor thus contended that the PILOT payments were owed by one or all of these entities as damages for the breaches of duty, adding that “the property has lost any entitlement to tax exemption it may have had” because of the failure to ensure payment.
The Assessor subsequently amended his reconventional demand against the Trustee, explicitly asserting that because the Trustee had become “the successor operator/lessee of the Days Inn Hotel .... [it] became obligated to make the ^payments in lieu of taxes to the City of New Orleans.” In addition, he charged that because La. R.S. 51:1160 permitted, rather than required, the collection of payments in lieu of ad valorem taxes, the statute must be declared unconstitutional because Article VII, Section 14(A) prohibits “the giving away of things of value of the state and its political subdivisions.” The State Attorney General was cited and served with this pleading on August 6,1999.[1]
After additional discovery, the Assessor submitted another memorandum in opposition to the Trustee’s motion for summary judgment. According to the exhibits presented in support of the opposition, after Days Inns filed for bankruptcy, a bondholders’ committee had contracted with other firms to manage and operate the hotel. The exhibits also reflected that in February 1993, Hibernia had received a bankruptcy pay-out of its claims against Days Inns, which had included amounts due for 1991-92 property taxes. Based upon the evidence presented, the Assessor argued that the Trustee was obligated to make the PILOT payments based upon both its status “as lessee of the project” as well as the funds received from the bankruptcy proceedings.
On November 5, 1999, the Board and the City jointly answered the Assessor’s July 1999 pleading, essentially agreeing *74 that the Bank of New York was liable for the PILOT payments, but denying that there was any basis for such a claim against the Board. Like the Assessor, these defendants included incidental demands against the Trustee and Days Inns, asserting that those entities remained liable under the Subordinate Agreement for the payments in lieu of taxes.
LOn January 25, 2000, the Trustee filed exceptions of no cause of action and res judicata as to the reconventional demands asserted by the Assessor, the Board and the City. In addition to asserting the 1994 consent judgment as a defense to any tax assessments, the Trustee argued that because it was acting on behalf of the bondholders who financed the project, rather than as a successor-in-interest to the lessee, it could not be held liable under the Subordinate Agreement. It was further claimed that because the property is exempt from ad valorem taxes as long as it is owned by the Board, there was no basis for any tax assessments or enforcement actions by the Assessor or the City. These exceptions, as well as the Trustee’s motion for summary judgment on its main demand, were set to be heard on February 11, 2000.
On February 7, 2000, the Assessor responded with an opposition to the Trustee’s exceptions, essentially arguing that as long as the hotel is operating pursuant to any of the 1983 contracts, the obligation for PILOT payments under the Subordinate Agreement must survive; otherwise, there would be an unconstitutional waiver of taxation. Additionally, the Assessor asserted that res judicata cannot bar his claims because the prior judgment did not involve the same parties as in the present litigation.[2] The City and the Board also filed a written opposition, emphasizing that for purposes of an exception of no cause of action, the allegations of their reconventional demand must be accepted as true.
On the scheduled hearing date, oral arguments were presented on the Trustee’s motion for summary judgment on the principal demand as well as on its 17exceptions to the reconventional demands. On February 18, 2000, written judgment was rendered in the Trustee’s favor, granting summary judgment and sustaining both exceptions. Accordingly, the trial court ordered that all tax assessments and adjudications for 1991 through 2000, inclusive, be cancelled and that “future assessments, adjudications, tax bills and tax liens relating to the Property be, and hereby are, PROHIBITED for as long as the Industrial Development Board of the City of New Orleans, Inc. owns the property.” All three defendants have appealed from this judgment.
DISCUSSION
Summary Judgment on the Main Demand
The Assessor asserts that the Trustee is not entitled to summary judgment because the present version of La. R.S. 51:1160 is unconstitutional in that it permits, rather than requires, PILOT payments on property owned by an industrial development corporation. However, in a joint appellate brief, the City and the Board dispute that contention, arguing that the statute is a legitimate vehicle for the Board to require payments in lieu of taxes in exchange for *75 its assistance in funding a project. Nevertheless, these defendants assert that summary judgment was inappropriate in this case not only because there are unresolved factual issues, but also because the Trustee “has not proven that the Board was divested of its rights to require payments in lieu of taxes ... upon the apparent default by Days Inns.”
The Trustee counters that because Days Inns was the only party that agreed to make PILOT payments, the constitutionality of La. R.S. 51:1160 is not at issue in this suit. It further contends that while the defendants have repeatedly alleged that “the Trustee assumed the position of Days Inn” under the Subordinate Agreement, no evidence or authority has been submitted to support that | Sconclusion. The Trustee asserts that, instead, its rights derive solely from the default provisions of the Indenture Agreement, which were triggered by the Board’s failure to make the necessary payments of interest and principal when its lessee went into bankruptcy. Thus, the Trustee maintains that none of the defendants have identified a material factual dispute affecting its entitlement to the relief sought, and the trial court’s judgment should be affirmed.
“The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action .... The procedure is favored, and shall be construed to accomplish these ends.” La. Code Civ. Proc. art. 966 A(2). A motion for summary judgment shall be granted only if the evidence submitted by the parties, scrutinized equally, demonstrates that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. Proc. art. 966 C(l); Davis v. Bd. of Supervisors of LSU, 97-0382, p. 8 (La.App. 4th Cir.3/18/98), 709 So.2d 1030, 1034.
A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751; Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Id.
Hardy v. Bowie, 98-2821, p. 6 (La.9/8/99), 744 So.2d 606, 610.
When the mover has submitted evidence establishing the absence of material factual disputes and that it is entitled to judgment as a matter of law, “an adverse party may not rest on the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.” La.Code Civ. Proc. art. 967. Summary judgments are reviewed on appeal de novo, applying the same standard as used by the trial court. Magnon v. Collins, 98-2822, p. 5 (La.7/7/99), 739 So.2d 191, 195.
In this case, it is undisputed that the Board, as owner of the property at issue, entered into a Lease Agreement with Days Inns. In the accompanying Subordinate Agreement, the parties specified that although no property taxes were due on the property, the Lessee would make annual PILOT payments to the City in an amount determined by the Assessor. The evidence thus establishes that whether La. R.S. 51:1160 mandated PILOT payments or merely permitted their imposition,[3] the Board did, in fact, require such payments in the transaction at issue. Therefore, the Trustee is correct in asserting that the *76 Assessor’s challenge to the constitutionality of La. R.S. 51:1160 is not relevant to a decision on its motion for summary judgment in this case.[4]
The Board and the City argue that summary judgment was inappropriate because factual questions remain, specifying as follows:
There are unresolved issues of fact as to the plaintiffs assumption as operator of Days Inns and as Trustee of the Project, whether the Trustee had the authority to make the payments in lieu of taxes, the effect of the apparent default of Days Inns on the Lease and the Indenture and the disposition of claims in the subsequent Chapter 11 bankruptcy action by Days Inns.
However, our review of the record establishes that virtually all of these purported factual questions are resolved by reference to the 1983 contracts submitted by the Trustee. These documents have not been challenged as inaccurate or invalid, nor have the defendants offered any additional contracts suggesting a subsequent | ^modification of the contractual terms, as would be necessary to defeat summary judgment under Civil Procedure article 967.
Moreover, we find no material factual question exists regarding Days Inns’ bankruptcy action. Instead, the record evidence establishes that the former Trustee filed a claim in those proceedings for more than $6.5 million owed to the bondholders as of April 30, 1992, but only $822,784.39 was received in satisfaction of their claims. The evidence also demonstrates that this claim against Days Inns included almost $150,000 for 1991 and 1992 “property taxes,” but with a notation that while the Lessee was obligated for these amounts under the Lease, “Section 1110 of the Indenture authorizes (but does not require) the Trustee to pay such taxes on the Debt- or’s default.” These facts are sufficient to decide the legal issue for which the evidence was offered by the defendants, which is their argument that because the bondholders claimed amounts due for “property taxes” and ultimately received a payment on that claim, the Trustee is thereby liable for the past and future PILOT payments owed under the Subordinate Agreement. Accordingly, the Trustee has carried its burden of establishing that there is no genuine issue of material fact regarding the claims asserted in its petition.
Similarly, we find that the Trustee has established entitlement to the relief sought as a matter of law. As long as the property at issue is owned by the Board, which was established by the New Orleans City Council as a public body, it is exempt from taxation. La. Const, art. VII, sec. 21(A); La. R.S. 51:1160. Therefore, there is no basis for any tax assessments, bills, liens, adjudications or other tax enforcement measures related to this property. Under the clear and unambiguous language of La. R.S. 51:1160, the only liability that may be imposed in favor of the City of New Orleans is a contractual obligation for annual Inpayments in an amount equal to the ad valorem taxes that would be payable but for the Board’s exemption.
*77 Furthermore, we find no legal basis for the defendants’ various arguments that this contractual obligation to make PILOT payments may now be imposed upon the Trustee and/or the bondholders, thus justifying the City’s enforcement actions. The documents evidencing the 1983 transaction clearly establish that the liability for these payments was created in the Subordinate Agreement and was imposed only on the Lessee, its successors and assigns, with no provision regarding another party’s obligation to make the payments in case of a default under the Lease. Additionally, because the Trustee was not a party to either the Lease Agreement or to the Subordinate Agreement, its consent to the imposition of this requirement on the bondholders cannot be implied.
Nevertheless, the defendants contend that the Trustee is now liable for the PILOT payments because it is operating the hotel on the property under its contract with a management corporation.[5] However, this argument was rejected under similar facts in Carriere v. Bank of Louisiana, 95-3058 (La.10/31/97), 702 So.2d 648, 662 (on reh’g), a case that also arose when a lender exercised its security rights upon a borrower’s default. In Carriere, foreclosure proceedings resulted in the lender’s ownership of its debtor-lessee’s rights under a lease as well as of the restaurant he had built on the leased property. When the lender subsequently took possession of the property and began operating the restaurant, the lessors sued to collect rents and property taxes owed under the lease.[6] The lessors prevailed in the | flower courts, which held that by operating the restaurant, the lender “had tacitly availed itself of the ‘step in the shoes’ provision of the lease and had therefore become the lessee,” and was thus obligated to pay rents to the lessors. Id. at p. 20, 702 So.2d at 673.[7] The Supreme Court rejected this conclusion, emphasizing that because the contracts of lease and of mortgage established the law between the parties, the lender’s rights and obligations could be determined only by an examination of those agreements. Because the “step in the shoes” provision in the lease was stated to be optional, and the lender had clearly chosen to instead foreclose on the mortgage that included the lessee’s rights but not his obligations, there was no “tacit assumption” of the obligation to pay rents or other sums due under the lease.
In the instant case, the sole source of the Trustee’s rights and obligations as regards this transaction is the Indenture of Mortgage and Pledge. While the Trustee points out that Section 1003 of the Indenture grants it “the rights and the position of the Issuer [the Board] under the Lease Agreement” in case of a default, none of the defendants' has identified, or even alleged the existence of, a provision in any of the contracts to support their arguments that the Trustee has assumed the Lessee’s obligations. Therefore, the defendants’ arguments that the Trustee *78 has “stepped into the shoes” of Days Inns, and has thereby assumed the Lessee’s obligations under the Lease and Subordinate Agreements, must be rejected.
Finally, the defendants have argued that because the bondholders asserted a claim in Days Inns’ bankruptcy that listed amounts due for “property taxes” and ultimately received a partial payment of that claim, the Trustee is thereby liable for |13the past and future PILOT payments owed under the Subordinate Agreement. No authority, whether in the laws or in the contracts between these parties, is cited in support of this position; instead, the defendants suggest that equity towards the other taxpayers of the City demands such a result. However, as explained above, the rights and obligations of the parties to this transaction are governed by their contracts. Absent evidence or law to the contrary, the fact that the Trustee was able to recoup some of the money owed to the bondholders who financed the Board’s purchase cannot be seen as an assumption of the Lessee’s contractual obligation to make PILOT payments.
Accordingly, the trial court did not err in granting the Trustee’s motion for summary judgment, nullifying the prior assessments, liens and adjudications and prohibiting future tax assessments and/or tax enforcement against the property at issue.
Exceptions Asserted in Response to the Reconventional Demands
All three defendants asserted in their Assignments of Error that the trial court erred in sustaining the Trustee’s exceptions. .However, neither the appellate brief filed by the Assessor nor that submitted by the City and the Board contains any argument regarding the exception of no cause of action. Therefore, their appeals as to this portion of the judgment have been abandoned under Uniform Rules-Courts of Appeal, Rule 2-12.4, and the dismissal of the reconventional demands on the exception of no cause of action must be affirmed. Accordingly, we pretermit any discussion of the exception of res judi-cata.[8]
^CONCLUSION
For the reasons assigned, the trial court’s judgment is affirmed, both as to the relief granted on the Trustee’s main demand and in dismissing the defendants’ reconventional demands on the exception of no cause of action. The matter is remanded for adjudication of the cross claims and third party demands asserted by the defendants. All costs of this appeal are to be paid by the appellants.
JUDGMENT AFFIRMED; MATTER REMANDED.

. The Attorney General has not filed any pleadings in this matter, but a November 10, 1999 letter from his office to counsel for the Assessor was included as an exhibit to a memorandum filed in January 2000. The letter states that the Attorney General "will not actively participate at this time,” and requests instead that copies of pertinent pleadings be forwarded to that office.

. Also filed on February 7, 2000, was the Assessor's third party demand against Hibernia National Bank, claiming that because the bankruptcy pay-out "included sums due tax recipient bodies of the City ... from Days Inn,” Hibernia was liable for the PILOT payments for 1991 through 1995. Because issue was not joined on this demand and Hibernia was not a party to the motion and exceptions currently on appeal, we pretermit any discussion concerning the Assessor’s claims against Hibernia.

. As originally enacted in 1962, La. R.S. 51:1160 specified that the property and income of an industrial development board "shall be exempt from all taxation in the state of Louisiana, except for ad valorem taxes upon property owned by it.” It was amended *76 in 1966 to provide that "The corporation, its property, its income and all bonds issued by it ... shall be exempt from all taxation in the State,” but a lessee would be required "to pay a sum equal to the amount of ad valorem taxes” otherwise due. The present version of the statute, which permits rather than requires PILOT payments by a lessee, was enacted by 1972 La. Acts No. 103, § 8, effective June 25, 1972.

. Any challenge to the constitutionality of the legislative exemption of Board property from ad valorem taxes (see supra note 3) would be relevant only to the Assessor’s cross claim against the Board, which is not at issue in this appeal.

. No such contract was offered in support of, or in opposition to, the motion for summary judgment.

. A prior suit, to evict the lender and to terminate the lease agreement, had been unsuccessful. Carriere at pp. 6, 12-14, 702 So.2d at 664-65, 668-69, referencing Carriere v. Frank A. Occhipinti, Inc., 570 So.2d 43 (La.App. 5th Cir.1990), writ denied, 575 So.2d 392 (La.1991).

.The referenced provision of that lease stated that if the Lessee defaulted on his loan, then "the LENDER shall be permitted, at its option, to 'stand in the shoes' of the LESSEE,” thereby assuming the Lessee’s rights and liabilities under the lease. Id. at p. 4, n. 6, 702 So.2d at 663, n. 6.

. As with the exception of no cause of action, the Assessor's brief makes no mention of the exception of res judicata. While the brief on behalf of the City and the Board quotes the relevant portion of the 1994 Consent Judgment and notes that that language "reserves the rights of the defendants to act in subsequent years,” there is no specific argument regarding res judicata.