TERRI F. LOVE, Judge.
| T This appeal arises from a series of contracts executed in order to confect an agreement to redevelop housing on the former site of the St. Bernard Public Housing Development. The Orleans Parish tax assessor asserts that the act of transfer from St. Bernard I, LLC did not *924 transfer ownership of the improvements to the Industrial Development Board and that therefore, improvements situated on the site are subject to ad valorem taxation. St. Bernard I, LLC filed a motion for summary judgment asserting that it did not own the improvements and should not be taxed. The tax assessor then filed a cross-motion for summary judgment averring that St. Bernard I, LLC retained ownership of the improvements and was subject to taxation. The trial court granted St. Bernard I, LLC’s motion for summary judgment. We find that no genuine issues of material fact exist as to the tax exempt status of the improvements and affirm. We also find that the trial court did not abuse its discretion in granting the petition for intervention and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

St. Bernard I, LLC (“St. Bernard”) is developing the former site of the St. Bernard Public Housing Development into a mixed income, mixed use, multi-family rental housing development (“Development”). The first phase (“Phase I”) |2of the development, consisting of 466 residential units (“Improvements”), was completed in November 2010.[1] The Improvements were built upon land owned by the Housing Authority of New Orleans (“HANO”). HANO leased the land to St. Bernard pursuant to the Capital Ground Lease (“Ground Lease”), dated September 24, 2007, and the Amended and Restated Ground Lease, December 8, 2008. The Amended Ground Lease has a term of 99 years.[2] In Section 6.4.3 of the Ground Lease, HANO and St. Bernard acknowledged that the property, defined to include both the land and any Improvements constructed or to be constructed on that land, was anticipated to be exempt from all state and local government real estate taxes, other than the anticipated payment-in-lieu-of-taxes (“PILOT”). The PILOT agreement was confected under contemporaneous agreements executed between St. Bernard and the Industrial Development Board (“IDB”).
St. Bernard then acquired the participation of the IDB, a public corporation and instrumentality of the City of New Orleans, organized and existing under the laws of the State of Louisiana. The IDB is authorized and empowered by law, including particularly the provisions of Chapter 7 of Title 51 of the Louisiana Revised Statutes (the “IDB'Act”), to issue taxable and tax-exempt revenue bonds and other obligations, to acquire land and other immovable property, to construct, purchase or renovate buildings, and to promote “Development Projects” as defined under the IDB Act, that are determined by the IDB to be instrumental to the removal of blight or the redevelopment of distressed areas, or to promote economic development through the creation of jobs within the City of New Orleans.
La. R.S. 51:1160 provides that “the corporation and all properties at any Rtime owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana.” The IDB passed a resolution regarding a PILOT program, which read as follows:
WHEREAS, the Board of Directors [of the IDB] has concluded that the acquisition, construction and equipping of each Project at the various public housing development sites will be instrumental *925 to the removal of blight, the redevelopment of distressed areas and the promotion of economic development.
Then, the IDB entered into an Act of Transfer with St. Bernard, wherein St. Bernard transferred ownership of “Property and Improvements on the land leased by HANO to the IDB on December 8, 2008. The Act of Transfer included the following:
Transferor [St. Bernard] does by these presents grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which it has or may have against all preceding owners and vendors, unto the Transferee [the IDB], herein present, accepting and purchasing for itself, its successors and assigns, and acknowledging due delivery and possession thereof, all and singular, all of Transfer- or’s right, title and interest in the PROPERTY AND ALL IMPROVEMENTS on the Property described in Exhibit A hereto, defined hereinabove as the “Property” and the “Improvements”.
Once St. Bernard conveyed the ownership of the Improvements to the IDB, the IDB entered into a Sub-Lease and Sub-Sub-Lease (collectively “IDB Lease”) with St. Bernard. The IDB Lease subleased the land to St. Bernard and leased the future Improvements to St. Bernard. The IDB Lease included a PILOT agreement, wherein St. Bernard would pay rent.
In 2011, Erroll Williams, as the tax assessor for Orleans Parish, reviewed the public records regarding the Improvements and determined that St. Bernard 1 retained ownership of the Improvements. St. Bernard was then assessed and billed $453,377.62 for ad valorem taxes on the Improvements constructed on the land owned by HANO. St. Bernard paid the taxes under protest.
Subsequently, St. Bernard filed a petition for judicial review against Assessor Williams; Norman Foster, in his capacity as the City of New Orleans’ Director of Finance; the Department of Finance, Bureau of the Treasury, City of New Orleans; the City of New Orleans; and the Louisiana Tax Commission (collectively “Assessor Williams”) asserting that it did not own the Improvements, that the Improvements were subject to a taxation exemption, and seeking a refund of the taxes paid under protest. HANO filed a petition for intervention, which was granted by the trial court. St. Bernard then filed a motion for summary judgment asserting that the IDB owned the Improvements. Assessor Williams filed a cross-motion for summary judgment contending that the Act of Transfer was a simulation and that it did not transfer ownership of the Improvements.
The trial court denied Assessor Williams’ cross-motion for summary judgment and granted St. Bernard’s motion for summary judgment. The trial court further held that:
(1) That the 466 mixed income housing units built by St. Bernard on the old St. Bernard Housing Project site (“Improvements”) were transferred to and are owned by the Industrial Development Board for the City of New Orleans, Louisiana, Inc. (“IDB”) and are exempt from Orleans Parish ad valorem taxation pursuant to LSA R.S. 51:1152(B);
(2) That Defendants, Erroll G. Williams, Assessor, Parish of Orleans, State of Louisiana, Norman Foster, Director of Finance for the City of New Orleans, the Department of Finance, Bureau of the Treasury, City of New Orleans, City of New Orleans and the Louisiana Tax *926 Commission reverse the ad valorem tax assessed against St. Bernard for 2011 for tax bills 37W412816, 37W412808, 37W412802, 37W412841, 37W412833, and 37W412824 Land paid under protest in the amount of $453,377.62, with interest in accordance with law; and
(3) That the Assessor be and hereby is ordered to amend the City’s tax rolls to correctly reflect that the Improvements at issue in this matter are exempt from ad valorem taxation.
Assessor Williams’ motion for suspensive appeal followed, which sought to appeal only the judgment regarding the motions for summary judgment.
Assessor Williams asserts on appeal that the trial court erred in denying his cross-motion for summary judgment and granting St. Bernard’s motion for summary judgment. Specifically, Assessor Williams avers that the Improvements are owned by St. Bernard, that the Act of Transfer did not transfer ownership of the Improvements to the IDB, that the result was “dual ownership” of the Improvements, that the true intent of the parties was a simulation, and that the trial court erred in granting HANO’s request for intervention.

STANDARD OF REVIEW

Appellate courts review trial courts’ ruling on motions for summary judgment de novo. Sanchez v. Harbor Const. Co., Inc., 07-0234, p. 4 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 786. “An appellate court reviews a trial court’s decision granting summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment.” Id. “‘An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appell[ee] is entitled to judgment as a matter of law.’ ” Williams v. Mem’l Med. Ctr., 03-1806, p. 13 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1052-53, quoting Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
| ¡/‘The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). As to the burden of proof, the burden:
remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2). “The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions.” MeritPlan Ins. Co. v. DeSalvo, 03-1493, p. 3 (La.App. 4 Cir. 3/24/04), 871 So.2d 461, 463. “The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2).

OWNERSHIP OF IMPROVEMENTS

Assessor Williams asserts that the trial court erroneously granted St. Bernard’s *927 motion for summary judgment because the Improvements are either owned by St. Bernard or both St. Bernard and the IDB, and that the contracts entered into constituted a simulation. Assessor Williams’ contends that this Court’s recent ruling in Abundance Square Assocs., L.P. v. Williams, 10-0324 (La.App. 4 Cir. 3/23/11), 62 So.3d 261, is controlling. We disagree.
“Louisiana Const. Art. VII, § 21(A) provides that ‘[p]ublic lands [and] other 17public property used for public purposes’ are exempt from ad valorem taxation.” Abundance, 10-0324, p. 5, 62 So.3d at 263, quoting La. Const. Art. VII, § 21(A). “ ‘Exemptions from taxation are strictly construed, an exemption being an exceptional privilege which must be clearly and unequivocably and affirmatively established.’ ” Abundance, 10-0324, p. 5, 62 So.3d at 263-64, quoting Holley v. Plum Creek Timber Co., Inc., 38,716, p. 7 (La.App. 2 Cir. 6/23/2004), 877 So.2d 284, 290. “To be exempt under La. Const. Art. VII, § 21(A), the property must be public, and it must be used for a public purpose.” Abundance, 10-0324, p. 5, 62 So.3d at 264.
This Court, in Abundance, stated that determining public or private ownership alone was insufficient “to attain tax exempt status.” Abundance, 10-0324, p. 10, 62 So.3d at 267. Further, this Court reiterated that establishing how revenue from the property is utilized is a helpful factor in considering whether the property is dedicated to a public use. Id. Our final holding provided that:
[t]o the extent the plaintiffs are contractually and legally obligated to operate and maintain forty-eight (48) rental units in the Abundance Square Apartments and twenty-three (23) in the Treasure Village Apartments as public housing or PHA-Assisted Units, we conclude those units have been dedicated to public use, clearly serve a public purpose and, thus, are exempt from ad valorem taxes under Louisiana Const. Art. VII, § 21(A).
Abundance, 10-0324, pp. 11-12, 62 So.3d at 267.
The Improvements in the case sub judi-ce consist of 466 mixed-income housing units with seven public housing only units, 160 low income housing units, and 149 units that bear no income or rent restrictions. According to this Court’s reasoning in Abundance, the existence of 309[3] units labeled as non-public housing Runits presents genuine issues of material fact as to whether the entirety of the Improvements are eligible for tax exempt status.
However, Abundance is distinguishable, as it did not include the IDB or the statutes pertaining thereto. La. R.S. 51:1160 states that property owned by the IDB is exempt from taxation. Additionally, Assessor Williams’ purported factual questions regarding the ownership of the Improvements are resolved by reviewing the Act of Transfer and the IDB Lease.
This Court examined the usage of summary judgment procedure regarding a series of contracts, PILOT payments, and the IDB Act in Bank of New York v. Williams, 00-1922, p. 9 (La.App. 4 Cir. 8/22/01), 796 So.2d 69, 76. Having found that summary judgment was properly granted in favor of upholding the contracts at issue, we stated that:
[t]hese documents have not been challenged as inaccurate or invalid, nor have the defendants offered any additional contracts suggesting a subsequent modification of the contractual terms, as would be necessary to defeat summary judgment under Civil Procedure article 967. .
*928 Bank of New York, 00-1922, pp. 9-10, 796 So.2d at 76. We find this analysis applicable to the case subjudice.
While Assessor Williams asserts that the Act of Transfer and the IDB Lease did not transfer ownei’ship of the Improvements and constituted a simulation, we agree with the trial court’s assessment that there was no need to look beyond the four corners of the contracts presented.[4] The trial court stated:
that it’s not your run of the mill transfer of property jnwhere one owner sells everything, land and improvements to another. This isn’t that kind of transaction. It is a transaction pursuant to the Industrial Development Board’s enabling legislation for the purpose of economic development in the City.
Further, no “additional contracts suggesting a subsequent modification of the contractual terms, as would be necessary to defeat summary judgment under Civil Procedure article 967.” Bank of New York, 00-1922, pp. 9-10, 796 So.2d at 76. Summary judgment procedure is favored and the Act of Transfer and the IDB Lease were executed in compliance with the legislatively created IDB Act. Therefore, we find that, from the plain reading of the Act of Transfer and the IDB Lease, that the IDB is the owner of the Improvements. Thus, the trial court did not err in granting St. Bernard’s motion for summary judgment because the tax exemption is mandated by the IDB Act.

PETITION FOR INTERVENTION

Assessor Williams avers that the trial court erred by granting HANO’s petition for intervention, but did not seek supervisory review of this interlocutory ruling. However, the Louisiana Supreme Court stated that:
[t]he general rule undoubtedly is, as stated from time to time by this court, that an interlocutory judgment which does not cause irreparable injury is not appealable. (See also Article 2083 of the Code of Civil Procedure.) But this does not mean that such judgments are never subject to appellate review. It merely means that they are not independently and immediately appealable, and that appellate review thereof must await rendition of an appealable judgment in the cause. There are innumerable sorts of interlocutory judgments which, as such, are not independently appealable — i.e., overruling of pleas of prescription, of non-joinder of parties, of lis pendens, of exceptions of no cause and no right of action, etc. Nevertheless, when a judgment is rendered in the case which is appealable, the reviewing court can then consider the correctness of the prior interlocutory judgment.
People of Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752, 753 (1968). See also Walters v. Canal Motors, Inc., 240 So.2d 101, 103 (La.App. 4th Cir.1970).
Incidental actions, like a petition for intervention, “may be filed with leave of court ‘if it will not retard the progress of the principal action.’ ” Charia v. Allstate Ins. Co., 635 So.2d 370, 372 (La.App. 4th Cir.1994), quoting La. C.C.P. art. 1033. “A third person having an interest therein may intervene in a pending action to en *929 force a right related to or connected with the object of the pending action against one or more of the parties thereto.” La. C.C.P. art. 1091. The third party must either join the plaintiff by “demanding the same or similar relief,” “[ujniting with the defendant,” or oppose “both plaintiff and defendant.” La. C.C.P. art. 1091. The intervenor must also “ ‘have a justiciable interest in, and a connexity to, the principal action.’ ” Leger v. Kent, 01-2241, p. 3 (La.App. 4 Cir. 4/24/02), 817 So.2d 305, 307-08, quoting Atchley v. Atchley, 97-474, pp. 2-3 (La.App. 5 Cir. 1/14/98), 707 So.2d 458, 459. This Court elaborated on the two requirements as follows:
[A] ‘justiciable right’ as used in interpreting Article 1091 means the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it. If that right does exist, then, in order to intervene it must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on intervenor’s rights. The connexity requirement is essential.
Leger, 01-2241, p. 3, 817 So.2d at 308, quoting Amoco Prod. Co. v. Columbia Gas Transmission Corp., 455 So.2d 1260, 1264 (La.App. 4th Cir.1984). “A court has broad discretion in deciding whether to allow an intervention after the answer to the principal demand has been filed.” Charia, 635 So.2d at 372. Therefore, we must determine if the trial court abused its discretion in permitting HANO to intervene in the litigation.
When Assessor Williams contested the identity of the lessee of the land owned by HANO, HANO’s legal interest as lessor of that land was questioned because St. Bernard leased its interest in the Ground Lease to the IDB. The litigation also involves the intention of HANO’s that the Improvements would be exempt from ad valorem taxation. Both of the above facts demonstrate that HANO has a justiciable interest in the outcome of the litigation and a connexity to the principal action. Therefore, we find that the trial court did not abuse its discretion in granting HANO’s petition for intervention and affirm.

DECREE

For the above-mentioned reasons, we find that no genuine issues of material fact exist as to the tax exempt status of the Improvements and affirm. We also find that the trial court did not abuse its discretion in granting HANO’s petition for intervention and affirm.
AFFIRMED.
BELSOME, J., concurs in part, dissents in part with reasons.

. Phase I was financed by a complex financial scheme made up of both public and private entities.

. The ground lease between HANO and St. Bernard is not disputed.

. The IDB Lease states that there will be 310 "non-public housing units.”

. "LSA-C.C. Art.2046 sets forth a general rule of construction, providing that '[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.' " Brown v. Drillers, Inc., 630 So.2d 741, 748 (La.1994), quoting La. C.C. art.2046. "Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent.” Brown v. Drillers, Inc., 630 So.2d 741, 749 (La.1994).