EDWIN A. LOMBARD, Judge.
liThe instant appeal involves a dispute over whether ad valorem taxes were properly assessed for the re-development of the former Fischer Public Housing Development (“the FPHD”). The FPHD was a housing project located in Orleans Parish on land (“the Land”) that was owned by the Housing Authority of New Orleans (“HANO”). The FPHD was demolished by HANO, which subsequently joined with the Industrial Development Board of the City of New Orleans, Louisiana, Inc. (“the IDB”)[1], and later Fischer III, LLC (“Fischer”), to build a mixed-income multifamily housing development on the Land. Fischer is a for-profit entity that was created to develop the Land and to operate and manage the housing development (“the Improvements”) it built.
In order to finance a portion of constructing the Improvements, the IDB issued the IDB Capital Fund Program Revenue Bonds, Series A-l of 2003, in the total amount of $14,360,328 (the “IDB Bonds”) on December 30, 2003, initially |2executed in favor of Fischer’s predecessor Guste I, LLC. The IDB Bonds were purchased by J.P. Morgan Trust Company, National Association, and mature on December 1, 2023.
In connection with the development of the Land, HANO, the IDB and Fischer executed two documents, a Ground Lease and Sub-Lease, on January 20, 2005. Pursuant to the Ground Lease, HANO temporarily leased the Land on which Fischer built the Improvements to the IDB during the term of the IDB Bonds. Recital F of the Ground Lease provides that the Ground Lease is in effect as between HANO and the IDB only during the term of the IDB Bonds or will terminate earlier if the IDB Bonds are paid in full by Fischer. Once the IDB Bonds are paid in full, the Ground Lease terminates as between HANO and the IDB and the Ground Lease will be between HANO, as lessor, and Fischer, as lessee.
*1257 Pursuant to the Sub-Lease, wherein Fischer is referred to as the “Borrower,” Fischer sub-leases the Land on which it was to build the Improvements from the IDB. Recital F of the Sub-Lease provides that the term of the Sub-Lease as between the IDB and Fischer will terminate when the IDB Bonds are paid in full. Once the IDB Bonds are paid in full and discharged, the IDB is no longer a party to the SubLease and HANO replaces the IDB as the sub-lessor and Fischer remains the sub-lessee.
By the end of December 2011, Fischer constructed residential units on the Land consisting of the 103 mixed income housing units, plus supporting facilities (collectively referred to herein as “the Improvements”).[2] Fischer was contractually obligated to build, pay for and manage the Improvements.
[■Determining that the Improvements were owned by Fischer, Erroll G. Williams, in his capacity as Assessor, Parish of Orleans, State of Louisiana, (“the Assessor”) placed the Improvements on the Orleans Parish assessment rolls for the 2012 and 2013 tax years. Fischer untimely paid the 2012 property taxes, totaling $222,336.15, under protest. Nevertheless, it timely paid its 2013 taxes, in the amount of $149,704.80, under protest.[3] The Land upon which the Improvements were built has not been taxed and therefore, is not at issue.
Procedural History
On February 19, 2013, Fischer filed a Petition for Judicial Review against the Assessor, Norman Foster, in his capacity as the Director of Finance for the City of New Orleans (“the Director”), the Department of Finance, Bureau of the Treasury, for the City of New Orleans, the City of New Orleans and the Louisiana Tax Commission. In its petition, Fischer sought the following relief:
1) Refund of the 2013 tax paid under protest to the City, plus interest;
2) That the 2012 tax tender, plus interest be refunded and/or released to Fischer, and
3) That the Assessor be directed to amend the City’s tax rolls to correct the assessment accordingly, and for other general and equitable relief as permitted by law.
In support of its petition, Fischer contemporaneously filed a “Motion to Deposit Funds into the Registry of the Court” seeking leave of the district court to deposit its 2012 ad valorem taxes into the registry of the Court to be held pending |4the resolution of the issues presented in its petition. The district court granted the motion.
The Director and the City collectively filed an answer and therein raised five (5) affirmative defenses: 1) Fischer’s petition failed to state a cause of action against them; 2) the petition fails to state a right of action against them; 3) Fischer lacked standing against them as a matter of law; 4)any and all actions taken by the defendants were reasonable under the circumstances; and 5) the defendants cannot be held liable for discretionary acts as alleged. Subsequently, the Assessor filed his answer and raised peremptory exceptions of prescription and no cause of action.
In November 2013, Fischer filed a motion for summary judgment asserting that *1258 it is and has been exempt from ad valorem taxes pursuant to Art. VII, § 21 of the Louisiana Constitution and La.Rev.Stat. 51:1160. The Assessor filed a cross-motion for summary judgment as well as peremptory exceptions of prescription and no cause of action for the 2012 property tax claims.
On February 13, 2014, the district court denied Fischer’s motion for summary judgment and granted the cross-motion for summary judgment of the Assessor as well as both of his exceptions. Subsequently, Fischer filed a motion for new trial, which the district court denied. Fischer timely filed the instant appeal and raises three (3) assignments of error:
1) Whether the Improvements are . owned by the IDB and are therefore exempt from ad valorem taxation pursuant to the Article VII, § 21 of the Louisiana Constitution as public property used for a public purpose and pursuant to La.Rev.Stat. 51:1160;
2) Whether the district court erroneously granted the Assessor’s cross-motion for summary judgment and denied Fischer’s motion for summary judgment because, |sat a minimum, a genuine issue of material fact existed as to the provisions of the SubLease; and
3) Whether the district court erroneously maintained the Assessor’s exceptions of prescription and no cause of action because (1) the facts as pled in the Petition, which must be taken as true when considering an exception of no cause of action, stated a cause of action for judicial review of the assessment of the 2012 taxes and (2) the evidence presented at the hearing showed that any prescriptive period was interrupted by the actions of the Assessor’s office in representing to Fischer that the exemption would be recognized.
Motions for Summary Judgment
 Finding that Fischer’s first two assignments of error are related to whether the district court erred in denying its motion for summary judgment and granting the Assessor’s cross-motion for summary judgment, we combine our discussion of the same.
“Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.” Burrows v. Executive Prop. Mgmt. Co., 13-0914, pp. 5-6, (La.App. 4 Cir. 3/12/14), 137 So.3d 698, 702 [citations omitted]. “Thus, we review, whether ‘the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.’” Id., 13-0914, p. 6, 137 So.3d at 702 (citing La. C.C.P. art. 966 B). “The summary judgment procedure is designed, to secure the just, speedy, and inexpensive determination of actions such as this.” Id.
The issue at the crux of this appeal is whether Fischer owns the Improvements it built pursuant to the terms of the SubLease. If so, the | improvements would be subject to ad valorem taxation. Fischer contends that HANO leased the Land to the IDB via the Ground Lease. Thereafter, the Sub-Lease was executed and therein the IDB sub-leased the Land to Fischer. Arguing that ownership interest in the Land and Improvements was never transferred to it, Fischer maintains that HANO and the IDB recognized and stipulated that the Improvements “were to be. built on the Land were and are owned by the IDB and leased to Fischer.”
Regarding the Assessor’s cross-motion for summary judgment, Fischer avers that the district court erred in determining that *1259 it owned the Improvements because it presented extensive evidence that the Improvements were owned by the IDB. It contends that affidavits of the General Counsel for HANO, Robert B. Barbor, and the President of the IDB, Alan H. Phillip-son, support its motion. According to Fischer, both Messrs. Barbor and Phillip-son attested that, under the terms of the Ground Lease and the Sub-Lease, the IDB owned the Improvements, which as a result were exempt from ad valorem taxation. Considering that the Assessor did not present any affidavits from the parties who were involved in drafting, negotiating and executing the leases, Fischer avers that the Assessor did not present evidence in support of his position. The Assessor, it contends, relies solely upon his interpretation of the contested version of Section 3.4 of the Sub-Lease, which he sets forth in his affidavit, and the Ground Lease.
Additionally, Fischer argues that, because the Assessor failed to offer any evidence in support of his cross-motion for summary judgment, the district court disregarded the affidavits it presented or im-permissibly made a credibility determination in granting the Assessor’s motion. Thus, it avers that the Assessor’s cross-motion for summary judgment should have been denied.
17Fischer further maintains that its motion for summary judgment should be granted because all of the parties to the Ground Lease and Sub-Lease understood and intended that the Improvements were the IDB’s property and were to be exempt from ad valorem taxation. It contends that the property is exempt pursuant to La. Const. art. VII, 21(A), which provides in pertinent part:
In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
(A) Public lands; other public property used for public purposes.
Fischer argues that the Improvements are owned by the IDB and are being used for public purposes, such as: the redevelopment of public housing in New Orleans, blight removal and redevelopment of distressed areas or to promote economic development through creating jobs in New Orleans. Thus, the Improvements, it argues, meet the statutory requirements for tax exemption as it is “other public property used for public purposes.” The IDB acted within the scope of the IDB Act and its Resolution in determining that both the Land and Improvement were and are being used for a public purpose. La.Rev. Stat. 51:1152(A)(6) and (B).
Lastly, Fischer points out that an identical ownership structure has been used for development projects in Louisiana, including the majority of former public housing in New Orleans. Fischer principally relies upon St. Bernard I, LLC v. Williams, 12-0372 (La.App. 4 Cir. 3/13/13), 112 So.3d 922, as well as La. Atty. Gen. OP. No. 04-0321 (12/21/03).[4]
|sThe district court, however, determined that Fischer owns the Improvements and owed the taxes assessed for 2012 and 2013; thus, it granted the Assessor’s cross-motion for summary judgment and denied Fischer’s motion for summary judgment. Pursuant to our de novo review, we note that it is the language and interpretation of the Ground Lease and Sub-Lease that is pivotal in resolving whether Fischer owned the Improvements at issue.
*1260 Under the terms of the Ground Lease, it was Fischer’s choice to decide whether it wanted to own the Improvements or leave them under the IDB’s ownership. In reference to the ownership of the Improvements, Section 8.2(b) of the Ground Lease provides as follows:
... Until the Bonds have been fully paid and discharged, all Improvements, buildings, fixtures, equipment and machinery located on the Land during, the term of this Ground Lease shall automatically become the property of the IDB unless the Borrower [Fischer] elects to the contrary in writing. The Borrower [Fischer] shall on a reasonable basis, but not more than once per year, furnish to the IDB, a list of property owned by the IDB and those owned by the Borrower [Fischer], if any.
The Assessor asserts that Fischer elected, with the execution of the Sub-Lease, to own the Improvements. However, the record reveals that there is a discrepancy between the language in the pertinent portion of the Sub-Lease, Section 3.4, that was provided to the Assessor by Fischer in discovery and the version of the SubLease that Fischer relies upon.
The wording of Section 3.4, entitled Title to and Authorization of Improvements, in the Sub-Lease submitted to the Assessor, states in pertinent part:
At all times during the Term of this Sub-Lease the Improvements and the Equipment shall be owned by the Borrower [Fischer] and during the Term, the Borrower [Fischer] alone shall be entitled to all of the tax attributes of ownership ...
19However, the wording of Section 3.4 that Fischer claims is accurate provides:
At all times during the Term of this Sub-Lease, the Improvements and the Equipment shall be owned by the IDB; except that during the Term, the Borrower alone shall be entitled to all of the tax attributes of ownership ...
Another issue with the varying versions of the Sub-Lease is that page nine (9) of the Sub-Lease supported by Fischer — the page on which Section 3.4 is located — does not contain the file path information that is located on the bottom of all the other pages in both versions of the Sub-Lease.[5] Thus, the Assessor contends that Fischer’s page nine is an altered version of the SubLease.
We note, however, that it is the language of Fischer’s version of Sub-Lease, without the file path, that is supported by the affidavits of representatives of HANO and the IDB. Both affidavits were executed based upon the respective knowledge of the affiants as well as their review of the books and records that HANO and the IDB, respectively, maintained in the ordinary course of business.
The affidavit of HANO’s General Counsel, Robert E. Barbor, states that the Improvements on the Land were and are the property of IDB that were leased to Fischer, pursuant to the Sub-Lease. Furthermore, he attests that Fischer only has a leasehold interest in the Improvements. The affidavit further states that La. Atty. Gen. OP. No. 04-0321 (12/21/03) and Resolution No. R-07-115, which the New 11f)Orleans City Council passed on or about March 1, 2007, reveal the tax-exempt nature of the Improvements.
In the affidavit of the President of the Board of Directors of the IDB, Alan H. *1261 Phillipson, he explained the IDB’s intention and purpose in entering into the Ground Lease was to acquire a leasehold interest in the Land underlying the former site of the Fischer Housing Community. Through the Sub-Lease, the IDB leased to Fischer the Land and the Improvements located or to be located on the Land. Subsequent to the execution of the Ground Lease and Sub-Lease, it was the understanding and intent of the IDB that the Land was owned by HANO, leased to the IDB and sub-leased to Fischer. Mr. Phil-lipson further attested that it was the understanding and intent of the IDB that the Improvements were owned by the IDB and leased to Fischer. Lastly, he stated that the IDB understood, as a result of executing both documents, that the Land would continue to be owned by HANO, and would be exempt from ad valorem taxation as land owned by HANO. It contends that the IDB also understood that the Improvements located or to be located on the Land would be owned by the IDB and would be exempt from ad valorem taxation as public property used for a public purpose.
We find that this discrepancy in wording and appearance between the two SubLeases evidences that there is a genuine issue of material fact as to which version is correct. Only Fischer’s version of the Sub-Lease is supported by affidavits of representative of HANO and the IDB, which were parties to the Sub-Lease. Upon further review of the record, it is clear that the district court took issue with the affidavits executed by the representatives of HANO and the IDB representatives, who admittedly were not the persons who executed the General Lease and SubLease. Indeed, the district court questioned Fischer as to why those | npersons who actually signed the contracts at issue were not deposed. The Assessor, on the other hand, only supported his cross-motion for summary judgment with his own affidavit wherein he attests to his interpretation of the contracts at issue.
Considering the wording and file path discrepancies between the varying SubLeases as well as the need for more discovery to be conducted, we find that genuine issues of material fact preclude the granting of the Assessor’s cross-motion for summary judgment. We further reason that the existence of these same genuine issues of material fact also precludes the granting of Fischer’s motion for summary judgment. Therefore, we reverse the granting of the Assessor’s motion for summary judgment and affirm the district court’s denial of Fischer’s motion for summary judgment.
Additionally, we note that the legal authority cited by Fischer is factually distinguishable. In St. Bernard, supra, a developer leased property from HANO. We reasoned that the documents executed among HANO, the IDB and the developer were in conformity with the IDB Act and that the IDB was the owner of the improvements. Id., 12-0372, pp. 8-9, 112 So.3d at 928. Thus, the language of the contracts in St. Bernard clearly supported our determination that no ad valorem taxes were due. However, in the matter sub judice, the language of the Sub-Lease is in dispute, so it is not evident that Fischer is exempt from ad valorem taxation.
Furthermore, we find that Fischer’s reliance upon La. Atty. Gen. OP. No. 04-0321 (12/21/03), is also distinguishable. In La. Atty. Gen. OP. No. 04-0321 (12/21/03), the Louisiana Attorney General addressed whether the IDB’s tax-exempt status extends to property leased to affiliates of HANO for the redevelopment of portions of certain public housing developments in ' New | ^Orleans. Fischer contends that the IDB requested this opinion of the Louisiana Attorney General to specifically address Fischer’s project. He opined that *1262 property owned by the IDB and comprising part of the projects or improvements that are leased by it to HANO affiliates “should remain exempt from ad valorem taxation in accordance with LSA-R.S. 51:1160” so long as the property is held by the Board. However, he cautioned that his determination was strictly limited to the question of the taxability of improvements that are “actually owned by the Board.” He further expounded that his office was not in a position to examine the underlying documentation that was described in the request and noted that his opinion as to the legality of the documents was not sought. Therefore, considering that the instant dispute does involve a review of the underlying documentation and the legal ramifications of the same, we do not find La. Atty. Gen. OP. No. 04-0321 (12/21/03) to be persuasive authority in this matter.
Exceptions of Prescription and No Cause of Action
Lastly, in its remaining assignment of error, Fischer asserts that the district court erroneously maintained the Assessor’s exceptions of prescription and no cause of action. Fischer avers that the facts as pled in its petition, which must be taken as true when considering an exception of no cause of action, stated a cause of action for judicial review of the assessment of the 2012 taxes. It contends that it was precluded from timely paying its taxes under protest by the assurances of employees of the Assessor’s office that its tax-exempt status would be recognized. Fischer relies upon the affidavit of its attorney, Wayne J. Neveu, who attested to the fact that he was assured by the Assessor’s office that the exemption would be recognized. Fischer further avers that once it became clear that the Assessor was | i3not going to recognize its alleged tax-exempt status, it was precluded from paying the 2012 taxes by the City. It argues that its cause of action arose at this point. Thereafter, it attempted to preserve its rights by filing suit and depositing the contested funds into the registry of the district court.
We first examine the district court’s grant of the Assessor’s exception of prescription. ‘When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court’s findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review.” Laker v. Kazik, 11-0853, p. 3 (La.App. 4 Cir. 1/18/12), 82 So.3d 1266, 1268, writ denied, 12-0378 (La.4/9/12), 85 So.3d 700 (citations omitted). “In the absence of manifest error, the appellate court cannot disturb the factual findings of the district court, since the issue to be decided by the appellate court is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one.” Id., 11-0853, pp. 3-4, 82 So.3d at 1268 (citations omitted).
Regarding its failure to pay the 2012 ad valorem tax assessment, Fischer contends that the evidence presented at the hearing showed that any prescriptive period was interrupted by the representations of employees of the Assessor’s office, who indicated that the exemption would be recognized.
The controlling statute on payment of ad valorem taxes under protest is La.Rev. Stat. 47:2134, entitled Suits to recover taxes paid under protest, which provides in pertinent part:
C. (1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or *1263 officers, notice at the time of payment of his \uintention to file suit for the recovery of the protested tax ...
(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest. [Emphasis added].
The aforementioned statute explains that those taxpayers raising a legality challenge, such as Fischer, must: 1) timely pay the amount of the taxes they seek to contest; 2) advise the designated tax officer(s) of the taxpayer’s intent to file suit for the recovery of the protested taxes; and, 3) file suit within thirty (30) days of the protested payment.
Albeit that Fischer’s petition states that it filed its suit under La.Rev.Stat. 47: 2134, it is clear from the record that Fischer did not follow statutory procedure in raising its legality challenge against the 2012 ad valorem taxes. Ad valorem taxes in Orleans Parish are due by February 1st of the year assessed. See Lindy Dev., L.L.C, 03-1078, p.12, 874 So.2d at 260. Fischer did not attempt to pay its 2012 taxes under protest to the Assessor until December 2012. Fischer’s right to pay its taxes under protest and challenge the legality of the 2012 ad valorem taxes prescribed by February 1, 2012, regardless of the alleged representations of the Assessor’s office. Thus, we do not find that the district court’s grant of the Assessor’s exception of prescription is manifestly erroneous or clearly wrong. This assignment of error is without merit.
11fiHaving affirmed the district court’s grant of the Assessor’s exception of prescription, we pretermit discussion of the district court’s grant of the Assessor’s exception of no cause of action as that issue is moot.
DECREE
For the foregoing reasons, the judgment of the district court granting the cross-motion for summary judgment of Enroll G. Williams, Assessor, Parish of Orleans, State of Louisiana, is reversed, and this matter is remanded to the district court for further proceedings. In all other respects, the judgment of the district court is affirmed.
REVERSED AND REMANDED IN PART; AFFIRMED IN PART.

. The IDB is a public corporation formed and authorized under La.Rev.Stat. 51:1151, ef seq., to acquire, own, lease, rent, repair, renovate, improve, finance, sell and dispose of properties in order that the IDB may be able to attract and retain business and commercial enterprises in New Orleans and expand New Orleans' employment and economy. Additionally, land owned by the IDB and income derived therefrom is exempt from all taxation in the state of Louisiana, unless the IDB requires a lessee to pay the requisite taxes. La.Rev.Stat. 51:1160.

. Sixty-seven (67) of the 103 mixed-income housing units are public housing units and the remaining thirty-six (36) are non-public housing units.

. “In Orleans parish [sic], ad velorem [sic] taxes are due by February 1st of the year represented by the taxes.” Lindy Dev., L.L.C. v. Degan, 03-1078, p. 12 (La.App. 4 Cir. 4/21/04), 874 So.2d 252, 260.

. Attorney General opinions are merely advisory and not binding; however, the courts of this State have recognized their persuasive authority. City of New Orleans v. Bd. of Directors of Louisiana State Museum, 98-1170, p. 6, n. 11 (La.3/2/99), 739 So.2d 748, 753.

. The file path wording contained at the bottom of all of the pages of the Assessor’s copy of the Sub-Lease and all but page nine (9) of Fischer's copy of the Sub-Lease states:
Y: * Attorneys*Neveu* HAN O *Fischer IIFJanuary 2005 Closing*FINAL CLOSING DOCUMENTS* 1.4 Fischer III Sublease-5. docl/19/2005 11:02AM.